BROWN MACHINE, DIVISION of JOHN BROWN, INC., a Delaware Corp., Plaintiff–Respondent,

v.

HERCULES, INC., Defendant–Appellant.

No. 54442.

Missouri Court of Appeals, Eastern District.

April 11, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 9, 1989.

Application to Transfer Denied June 13, 1989.

Gerre Strehlman Langton, St. Louis, for defendant-appellant.

Louis Joseph Basso, St. Louis, for plaintiff-respondent.

STEPHAN, Judge.

Hercules Inc. ("Hercules") appeals from the judgment of the trial court awarding respondent Brown Machine $157,911.55

plus interest after a jury verdict in favor of Brown Machine in its action against Hercules for indemnification. We reverse.

In early 1976 Brown Machine had sold appellant Hercules a T–100 trim press. The trim press was a piece of equipment apparently used in manufacturing Cool Whip bowls. The initial sales negotiations between the two companies for the trim press began in October 1975. Bruce Boardman, an engineer at Hercules, asked Jim Ryan, Brown Machine's district sales manager, to send Hercules a quote for a trim press. On November 7, 1975, Brown Machine submitted its original proposal No. 51054 for the model T–100 trim press to Hercules. The proposal set out sixteen numbered paragraphs describing the machine to be sold. Attached to the proposal was a printed form of fifteen paragraphs in boilerplate style captioned "TERMS AND CONDITIONS OF SALE". The eighth paragraph provided as follows:

> 8. LIABILITY: The purchaser agrees to pay in behalf of BROWN all sums which BROWN becomes legally obligated to pay because of bodily injury or property damage caused by or resulting from the use or misuse of the IOS [item of sale], including reasonable attorneys fees and legal expenses. The purchaser agrees to indemnify and hold BROWN harmless from all actions, claims, or demands arising out of or in any way connected with the IOS, its operation, use or misuse, or the design construction or composition of any product made or handled by the IOS, including all such actions, claims, or demands based in whole or in part on the default or negligence of BROWN.

Tim Wilson, Hercules' purchasing agent, reviewed the proposal submitted by Brown Machine. On January 7, 1976, he telephoned Jim Ryan at Brown Machine. Mr. Ryan's call report reflected that Hercules had prepared its purchase order No. 03361 in response to Brown Machine's proposal but that Hercules had objected to the payment term requiring a twenty percent deposit be paid with the order. After talking with Mr. Fassett, Brown Machine's product manager, Mr. Ryan told Mr. Wilson that Brown Machine could not waive the deposit and that an invoice for payment would be forwarded to Hercules.

Mr. Fassett issued a work order that day giving the shop instructions concerning the trim press equipment, followed by a written order the next day. The written order noted that "customer gave verbal P.O. [purchase order] for this stock machine. Will issue revision when formal purchase order received."

On January 19, 1976, Brown Machine received Hercules' written purchase order No. 03361 dated January 6, 1976. The order was for a "Brown T–100 Trimpress in accordance with Brown Machine quote # 51054. All specifications cited within quote except item # 6.1.1 which should read: 'Reverse trim' instead of 'Standard regular forward trim.'" In a blue box on the bottom left of the purchase order form in bold print appeared "THIS ORDER EXPRESSLY LIMITS ACCEPTANCE TO THE TERMS STATED HEREIN INCLUDING THOSE PRINTED ON THE REVERSE SIDE. ANY ADDITIONAL OR DIFFERENT TERMS PROPOSED BY THE SELLER ARE REJECTED UNLESS EXPRESSLY AGREED TO IN WRITING." The reverse side of Hercules' purchase order, captioned "TERMS AND CONDITIONS" contained sixteen boilerplate paragraphs, the last of which provided:

> 16. OTHER TERMS: No oral agreement or other understanding shall in any way modify this order, or the terms or the conditions hereof. Seller's action in (a) accepting this order, (b) delivering material; or (c) performing services called for hereunder shall constitute an acceptance of the above terms and conditions.

The purchase order contained no indemnity provision.

Brown Machine received two copies of the purchase order. One had been stamped "Vendor's Copy" at the bottom; the other was marked "ACKNOWLEDGMENT", with a space labeled "accepted by" for signature by Brown Machine.

Brown Machine did not return this prepared acknowledgment to Hercules.

The next day, on January 20, 1976, Mr. Fassett issued his second machine order to the shop revising his description to reflect that Brown Machine had received Hercules' formal purchase order and that the machine was no longer inventoried as a Brown stock item. On January 21, 1976, Brown Machine sent Hercules an invoice requesting payment of $4,882.00, the twenty percent deposit for the trim press.

Rather than returning the acknowledgment of the purchase order prepared by Hercules, Mr. Fassett of Brown Machine sent Hercules an "ORDER ACKNOWL-EDGEMENT" dated February 5, 1976. This letter stated as follows:

Below in detail are the specifications covering the equipment ordered, and the equipment will be manufactured to meet these specifications. If these specifications and terms and conditions of Sale are not in accordance with your understanding, please ADVISE US WITHIN SEVEN (7) DAYS OF RECEIPT OF THIS ACKNOWLEDGEMENT. If we do not hear from you within this period of time, we are proceeding with the construction of the equipment as per these specifications and terms as being agreed; and any changes occurring later may result in additional charges.

ONE T–100 TRIM PRESS AS FOLLOWS ...

The paragraphs following set out the same sixteen specifications contained in Brown Machine's original proposal. Paragraph 6.1.1 of the specifications again provided for "Standard-regular forward trim". Page four of the acknowledgment contained the same "TERMS AND CONDITIONS OF SALE" which had accompanied Brown Machine's earlier proposal of November 7, 1975, including paragraph eight on liability and indemnity. Only two minor changes had been penned in on page four, neither of which has any bearing on the issues presented for appeal.

Hercules responded with a letter on February 9, 1976, to Mr. Fassett that "This is to advise you that Provision 6.1 of your order acknowledgement dated 2/5/76 should read 'Reverse Trim' instead of 'Standard-regular forward trim.' All other specifications are correct." On February 16, 1976, Mr. Fassett confirmed the change in provision 6.1.1 and informed the shop that same day of the requested modification to be made.

Hercules never paid the twenty percent deposit. Brown Machine sent Hercules an invoice dated April 14, 1976, requesting final payment of the total purchase price. Brown eventually shipped the trim press to Hercules and Hercules paid the agreed-upon purchase price.

Sometime later, James Miller, an employee of Hercules, and his wife sued Brown Machine because of injuries he sustained while operating the trim press at Hercules' plant in Union, Missouri. Brown Machine demanded that Hercules defend the Miller lawsuit, but Hercules refused. Brown Machine eventually settled the Millers' lawsuit. Brown Machine later initiated this action against Hercules for indemnification of the settlement amount paid the Millers. Brown Machine claimed a condition of the original sales contract for the trim press required Hercules to indemnify Brown Machine for any claims arising from operation or misuse of the trim press.

Hercules' four points on appeal challenge the submissibility of Brown Machine's case, the verdict director given by Brown Machine, admission of certain allegedly prejudicial testimony and, finally, an instructional error. The dispositive issue on appeal is whether the parties had agreed to an indemnification provision in their contract for the sale of the T–100 trim press.

■ Hercules' first point disputes Brown Machine's contention that its initial proposal on November 7, 1975, constitutes the offer and that Hercules verbally accepted the offer by the telephone call on January 7, 1976, followed by its written purchase order dated January 6, 1976, which Brown Machine received January 19, 1976.

Article two of the Uniform Commercial Code governs transactions involving the sale of goods. U.C.C. § 2–102 (1977). Be-

cause the term "offer" is not defined in the code, the common law definition remains relevant. U.C.C. § 1–103. An offer is made when the offer leads the offeree to reasonably believe that an offer has been made. *Gilbert & Bennett Manufacturing Co. v. Westinghouse Electric Corp.*, 445 F.Supp. 537, 545[3] (D.Mass.1977). Restatement (Second) of Contracts § 24 (1981) defines "offer" as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."

The general rule is that a price quotation is not an offer, but rather is an invitation to enter into negotiations or a mere suggestion to induce offers by others. *Maurice Electrical Supply Co. v. Anderson Safeway Guard Rail Corp.*, 632 F.Supp. 1082, 1087[3] (D.D.C.1986); *USEMCO, Inc. v. Marbro Co.*, 60 Md.App. 351, 483 A.2d 88, 93[1] (1984). However, price quotes, if detailed enough, can amount to an offer creating the power of acceptance; to do so, it must reasonably appear from the price quote that assent to the quote is all that is needed to ripen the offer into a contract. *Quaker State Mushroom Co. v. Dominick's Finer Foods, Inc.*, 635 F.Supp. 1281, 1284[3] (N.D.Ill.1986); *see Boese–Hilburn Co. v. Dean Machinery Co.*, 616 S.W.2d 520, 524–25 (Mo.App.1981).

In this case Hercules could not have reasonably believed that Brown Machine's quotation was intended to be an offer, but rather an offer to enter into negotiations for the trim press. The cover letter accompanying the proposal mentioned that Brown Machine's sales representative would contact Hercules "to discuss this quote" and that the quotation was submitted for Hercules "approval." The sale price as quoted also included the notation "We have included a mechanical ejector (item 9.1.2) because we understand this unit may be used for development of many items that would require this option. However, if you decide this is not necessary $2,575.00 could be deducted from the above price for a total of $21,835.00." Most importantly, paragraph three of the terms and conditions of sale attached to the pro-posal expressly provided: "No order, sale, agreement for sale, accepted proposal, offer to sell and/or contract of sale shall be binding upon BROWN unless accepted by BROWN ... on BROWN standard 'Order Acknowlegment' [sic] form." Thus, because the quotation reasonably appeared to be an offer to enter into negotiations for the sale of a trim press with a mechanical ejector for $24,410.00 with acceptance conditioned upon Brown's order acknowledgment form, no firm offer existed. *Accord, Quaker State Mushroom, Inc.*, 635 F.Supp. at 1285. Brown's price quote was merely a proposal, not an offer, because of its provision that Hercules' acceptance was not binding upon Brown until Brown acknowledged the acceptance.

Even if we were to accept Brown Machine's characterization of its proposal as an offer, the quotation by its own terms and conditions expired thirty days after its issuance ("All quoted prices are subject to change without notice except those written proposals which shall expire without notice ... thirty (30) calendar days from date issued ..."). Hercules' written purchase order was dated January 6, 1976, and their telephone conversation of January 7, 1976, were both well beyond the expiration of the quote. Thus, even if the quotation were construed as an offer, there was no timely acceptance. *See Gilbert & Bennett*, 445 F.Supp. at 545[4].

■ If the acceptance of a price quotation, sufficiently detailed to constitute an offer, is not binding on the seller because the time within which it could have been accepted has lapsed, the purchase order, not the price quotation, is treated as the offer since the purchase order did not create an enforceable contract. *McCarty v. Verson Allsteel Press Co.*, 89 Ill.App.3d 498, 44 Ill.Dec. 570, 411 N.E.2d at 936, 943[5] (1980). Thus, we believe Hercules' purchase order constitutes the offer. As a general rule, orders are considered as offers to purchase. *Aaron E. Levine & Co. v. Calkraft Paper Co.*, 429 F.Supp. 1039, 1048[15] (E.D.Mich.1976).

The question then arises whether Brown Machine's acknowledgment containing the indemnity provision constitutes a counter offer or an acceptance of Hercules' offer with additional or different terms. Section 400.2–207, RSMo 1986, which mirrors § 2–207 of the Uniform Commercial Code provides the workable rule of law addressing the problem of the discrepancies in the independently drafted documents exchanged between the two parties.[1] Section 400.2–207 provides as follows:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits aceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such cases the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provision of this act.

Under subsection (1) an offeree's response to an offer operates as a valid acceptance of the offer even though it contains terms additional to, or different from,

the terms of the offer unless the "acceptance is expressly made conditional" on the offeror's assent to the additional or different terms. Where the offeree's acceptance is made "expressly conditional" on the offeror's assent, the response operates not as an acceptance but as a counter offer which must be accepted by the original offeror. *Falcon Tankers, Inc. v. Litton Systems, Inc.*, 355 A.2d 898, 906[7] (Del.Super.1976). Restatement (Second) of Contracts § 59 (1981) expresses it succinctly: "[A]n offeree's reply which purports to accept an offer but makes acceptance conditional on the offeror's assent to terms not contained in the original offer is effective as a counter-offer rather than acceptance."

The general view held by the majority of states is that, to convert an acceptance to a counter offer under UCC § 2–207(1), the conditional nature of the acceptance must be clearly expressed in a manner sufficient to notify the offeror that the offeree is unwilling to proceed with the transaction unless the additional or different terms are included in the contract. *See Annot.* "What Constitutes Acceptance 'Expressly Made Conditional' Converting it to Rejection and Counteroffer under UCC § 2–207(1)", 22 ALR 4th 939, 948–49 (1983) and cases cited therein. The conditional assent provision has been construed narrowly to apply only to an acceptance which clearly shows that the offeree is unwilling to proceed absent assent to the additional or different terms. *Id.; see Challenge Machinery Co. v. Mattison Machine Works*, 138 Mich.App. 15, 359 N.W.2d 232, 235[3] (1984) citing *Idaho Power Co. v. Westinghouse Electric Corp.*, 596 F.2d 924 (9th Cir.1979); *Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161 (6th Cir.1972).

We find nothing in Brown Machine's acknowledgment of February 5, 1976, which reflects its unwillingness to proceed unless it obtained Hercules' assent to the additional and different terms in Brown Machine's

---

1. Respondent's contention that a choice of law issue arises is without merit since § 2–207 of the Uniform Commercial Code has been enacted in nearly identical terms in Delaware, Michigan, Missouri, and Wisconsin, all the states with possible nexus to this case. *Cf.* U.C.C. § 2–207 with Del.Code Ann. tit. 6 § 2–207 (1974); Mich. Comp.Laws Ann. § 440.2207 (1967); § 400.2–207 RSMo (1986); Wis.Stat.Ann. § 402.207 (West 1964 and Supp.1988).

acknowledgment, that is, page four of the acknowledgment styled "TERMS AND CONDITIONS OF SALE" which contained the indemnity provision. Brown Machine's acknowledgment was not "expressly made conditional" on Hercules' assent to the additional or different terms as provided for under § 2–207(1). Acceptance will be considered a counteroffer only if the acceptance is *expressly* made conditional on *assent* to the additional terms. *Clifford–Jacobs Forging Co. v. Capital Engineering & Mfg. Co.*, 107 Ill.App.3d 29, 62 Ill.Dec. 785, 787, 437 N.E.2d 22, 24 (1982). We conclude Brown Machine's acknowledgment did not operate as a counter offer within the scope of § 2–207(1).

■ Having determined that Brown Machine's order acknowledgment is not a counter offer, we believe that Brown Machine's acknowledgment operates as acceptance with additional or different terms from the offer, since the purchase order contained no indemnity provision. Under § 2–207(2), additional terms become a part of the contract between merchants unless (a) the offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is given. Hercules' purchase order here expressly limited acceptance to the terms of its offer. Given such an express limitation, the additional terms, including the indemnification provision, failed to become part of the contract between the parties.

■ We can conclude Hercules intended the indemnity provision to become a part of the parties' contract only if Hercules, as offeror, expressly assented to the additional terms, and, thus, effectively waived its condition that acceptance be limited to the terms of its offer, the purchase order. While the text of § 2–207 does not incorporate such a provision, Official Comment 3 to § 2–207 states: "Whether or not additional or different terms will become part of the agreement depends upon the provisions of subsection (2). If they are such as materially to alter the original bargain, they will not be included unless expressly agreed to by the other party." The indemnification provision was clearly a material alteration to the parties' agreement.

The evidence does not establish that Hercules expressly assented to the additional terms contained in Brown Machine's order acknowledgment. Brown Machine's order acknowledgment of February 5, 1976, indicated that "[i]f these specifications and terms and conditions of Sale are not in accordance with your understanding, please ADVISE US WITHIN SEVEN (7) DAYS OF RECEIPT OF THIS ACKNOWLEDGEMENT." Hercules replied by letter four days later advising Brown Machine that provision 6.1.1 should provide for reverse trim instead of standard regular forward trim, followed by "all other specifications are correct." Hercules' use of the term "specifications" is unambiguous and clearly refers only to the protocol for the machine's manufacture. Nothing in its response can be construed as express assent to Brown Machine's additional "terms and conditions of sale." Express assent under § 2–207(2) cannot be presumed by silence or mere failure to object. *N & D Fashions, Inc. v. DHJ Industries, Inc.*, 548 F.2d 722, 726–27[5] (8th Cir.1977).

We believe it is clear as a matter of law that the indemnification clause cannot be held to be part of the contract agreed upon by the parties. The judgment of the trial court is reversed. We need not address the remaining points raised by Hercules.

REVERSED.

SMITH, P.J., and SATZ, J., concur.