# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-4063EM

_____

| | |
|---|---|
| Nordyne, Inc., | * |
| | * |
| Appellant, | * |
| | * On Appeal from the |
| v. | * United States District Court |
| | * for the Eastern District |
| | * of Missouri. |
| International Controls & | * |
| Measurements Corporation, | * |
| | * |
| Appellee. | * |

_____

Submitted: June 15, 2001

Filed: August 22, 2001

_____

Before McMILLIAN and RICHARD S. ARNOLD, Circuit Judges, and DAWSON,[1]
     District Judge.

_____

RICHARD S. ARNOLD, Circuit Judge.

_____

[1]The Hon. Robert T. Dawson, United States District Judge for the Western
District of Arkansas, sitting by designation.

Nordyne, Inc., appeals from the District Court's[2] order granting the motion of International Controls & Measurements Corporation (ICM) to dismiss Nordyne's breach-of-warranty action for improper venue. Nordyne, as buyer, and ICM, as seller, had been doing business for approximately ten years when the current dispute arose. Nordyne argues that the District Court erred in holding that a forum-selection clause on the reverse side of ICM's invoices was enforceable. We affirm.

I.

Nordyne, a Delaware corporation with its principal place of business in St. Louis, Missouri, manufactures heating, ventilation, and air conditioning equipment. ICM, a New York corporation, manufactures electronic defrost control boards for use in such equipment. Before the dispute underlying this law suit, Nordyne had purchased control boards from ICM for approximately ten years. In shipping products to Nordyne, ICM would forward a Customer Service Invoice with the following printed immediately below the heading: "CUSTOMER'S ORDER IS ACCEPTED ON THE EXPRESS CONDITION THAT THE TERMS AND CONDITIONS SET FORTH ON THE FACE AND REVERSE SIDE OF THIS INVOICE . . . SHALL APPLY AND THEY SHALL CONSTITUTE THE COMPLETE AGREEMENT BETWEEN THE PARTIES."

One of the Terms and Conditions of Sale printed on the reverse side of the Customer Service Invoice was a forum-selection provision: "In any action or proceeding brought pursuant to this agreement venue shall be laid in Onondaga, New York." Another term provided that ICM warranted its products for one year from the date of shipment. On several occasions, Nordyne availed itself of this one-year warranty.

[2]The Hon. Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

In 1997, ICM began marketing a new version of the control panel Nordyne had been purchasing. ICM sent the first quotation for this product to Nordyne on May 13, 1997. Upon Nordyne's determination that one of the new features was not necessary for its purposes, ICM modified the control panel, and on July 29, 1997, tendered a new quotation for the unit as modified. This quotation was for Nordyne's estimated annual usage of 40,000 units at $9.87 per unit. The quotation provided that it was valid until December 31, 1997, that "[b]lanket orders must be fully released within one year," that standard commercial packaging would apply, that shipment would be "net 30 days; FOB Syracuse, NY," and that all orders were non-cancelable and non-returnable.

Printed on the bottom of the quotation was the following: "<u>CONDITIONS ON REVERSE ARE PART OF THIS QUOTATION</u>." These conditions included the following: "This quote is subject to the Seller's standard terms and conditions contained on the order acknowledgment." The conditions also included the statement, "All orders are subject to acceptance by the Seller at its home office in Cicero, New York."

Nordyne asked to see manufactured samples of the new control panel. On September 12, 1997, ICM sent five such samples to Nordyne with a letter from ICM's home office stating, "Full blown manufacturing of this device is awaiting your sign off of these check samples as approved for production. Please review the samples and 'sign off' this document and send it back by return fax so that we may fulfill your production requirements in a timely manner." On September 15, Nordyne signed the production approval.

Two days later Nordyne issued a purchase order for 20,000 units at the quoted price, and under the shipping, payment, and packaging terms set forth in the quotation of July 29. The purchase order form stated, "Please enter our order for the above, subject to terms and conditions printed on reverse side. . . . Please acknowledge by signing and returning the attached acknowledgment form giving date of shipment." On

the reverse side of the purchase order appeared Terms and Conditions, including the following: "Buyer shall not be bound by this order until Buyer receives the acknowledgment copy of this order executed by Seller, and acceptance of the order constitutes an acceptance of all of the conditions stated herein." None of the conditions related to choice of forum in case of a dispute. The acknowledgment form, which ICM signed on September 22, stated, "This order is acknowledged and accepted subject to the expressed terms and conditions thereon. Any exceptions are noted under vendor remarks at left." ICM did not insert any exceptions into the provided space.

ICM made its first shipment on September 30, 1997. Between that date and mid-August 1998, ICM shipped Nordyne's entire order of 46,151 units at the rate of approximately one shipment per week. With each shipment, ICM included the Customer Service Invoice described above, as had been the practice between the parties. Nordyne paid in full for all the units it ordered.

Thereafter, Nordyne began experiencing difficulties with the ICM control panel and filed a breach-of-warranty action in the District Court. ICM moved to dismiss the complaint for improper venue, invoking the forum-selection clause on the reverse side of its Customer Service Invoices.

II.

The District Court agreed with ICM that the forum-selection clause was part of the contract between the parties. Applying Missouri law, the Court held that the July 1997 price quotation was an offer because it was the result of negotiations between the parties and it was sufficiently complete and detailed. It stated price per unit, estimated quantity, and a description of the product. It also stated the date the quote would expire, the packaging to be used, and terms regarding delivery and payment. The Court held that the "order acknowledgment" referred to in this quotation was ICM's invoice, which as noted above, begins with the statement, "CUSTOMER'S ORDER IS

-4-

ACCEPTED . . . ."  Nordyne accepted the offer by signing the production approval on September 15, 1997.  Thus, the terms and conditions, including the forum-selection clause, on the reverse side of ICM's invoices were incorporated by reference in ICM's offer, and Nordyne accepted these terms when it accepted ICM's quotation.

On appeal, Nordyne argues that the District Court erred as a matter of law in holding that the contract between the parties included the forum-selection clause.  It argues that the July 1997 quotation did not amount to an offer because (1) it was not for immediate acceptance, but was subject to ICM's approval at its home office, and to ICM's providing acceptable samples, and (2) it did not specify quantity and did not include a delivery schedule.  Nordyne proposes that its September 1997 purchase order was the offer, which ICM accepted by signing and returning Nordyne's acknowledgment form.  Nordyne argues that the terms and conditions on ICM's invoices were not part of the contract because the first invoice arrived after the contract had been made.  These terms and conditions were thus simply proposals for modifying an existing contract and not binding on Nordyne without its express consent.

III.

In this diversity case, we review <u>de novo</u> the District Court's application of state law, predicting how the highest court in Missouri would resolve the issues.  See <u>Salve Regina College v. Russell</u>, 499 U.S. 225, 231 (1991).  The transaction between Nordyne and ICM for the sale of goods is governed by Article 2 of the Uniform Commercial Code (UCC), as adopted by Missouri, Mo. Rev. Stat. § 400.1-201 et seq. A determination of the terms of the contract between ICM and Nordyne must begin with identification of the offer and acceptance.  Because the UCC does not define "offer," Missouri looks to its common law and to the Restatement of Contracts for the definition.  See <u>Brown Machine, Division of John Brown, Inc. v. Hercules, Inc.</u>, 770 S.W.2d 416, 419 (Mo. App. 1989).

Under Missouri case law, an "offer is made when the offer leads the offeree to reasonably believe that an offer has been made." Id. The Restatement (Second) of Contracts § 24 defines offer as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." The general rule is that a price quotation, such as one appearing in a catalogue or on a flyer, is not an offer, but is rather a suggestion to induce offers by others. Brown, 770 S.W. 2d at 419. However, a price quotation, "if detailed enough, can amount to an offer creating the power of acceptance; to do so it must reasonably appear from the price quote that assent to the quote is all that is needed to ripen the offer into a contract." Id.; see also The Boese-Hilburn Co. v. Dean Machinery Co., 616 S.W.2d 520, 524 (Mo. App. 1981). Factors relevant in determining whether a price quotation is an offer include the extent of prior inquiry, the completeness of the terms of the suggested bargain, and the number of persons to whom the price quotation is communicated. Restatement (Second) of Contracts § 26, comment c.

Here all factors weigh in ICM's favor. ICM and Nordyne had been communicating for several months regarding the contract at issue before the July 29, 1997, quotation was sent, this quotation was sent only to Nordyne, and the quotation included quantity, price, and time in which to accept, as well as packaging, shipping, and payment terms. We note that the quotation was for a product specifically designed for Nordyne. We find Nordyne's argument that the quotation was not an offer because it did not contain a delivery schedule to be without merit. The quotation included sufficient terms to constitute an offer under Missouri law.

The fact that ICM's home office issued the letter of September 12, 1997, asking for Nordyne's production approval, i.e., Nordyne's acceptance of ICM's offer, undermines Nordyne's argument that the quotation was not an offer because it required ICM's home office approval. This approval in fact occurred, and thereafter Nordyne approved the beginning of production.

We also reject Nordyne's argument that the quotation could not be the offer because the quantity was not definite. The quoted price-per-unit was based on Nordyne's own estimated annual usage of 40,000 units. Once Nordyne signed the production approval, we believe it was bound to purchase approximately this many units, just as ICM was bound to provide them at the quoted price. In fact, each party lived up to its side of the bargain in these respects. Nordyne ordered and paid for 46,151 units; ICM shipped the units ordered and charged Nordyne $9.87 apiece. Each purchase order issued by Nordyne, including the first one for 20,000 units, was not a new offer, but rather part performance of the contract between the parties. This contract included the terms and conditions under which the parties had been dealing for approximately ten years. The forum-selection provision had been part of the parties' course of dealing and incorporated by reference into the present contract. Lastly, we perceive no unfairness in enforcing one term of the terms and conditions on ICM's invoices, when Nordyne itself had been taking advantage of another such term — namely, the one-year warranty. Thus the District Court correctly granted ICM's motion to dismiss on the basis of improper venue.

Accordingly, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-