**J.D. FIELDS & COMPANY, INC.,**
**Plaintiff and Counterdefendant,**

v.

**UNITED STATES STEEL INTER-**
**NATIONAL, INC., Defendant**
**and Counterplaintiff.**

**Civil Action No. H–08–3076.**

United States District Court,
S.D. Texas,
Houston Division.

Oct. 14, 2009.

Order Denying Reconsideration
Feb. 17, 2010.

David James Sacks, Sacks Law Firm, Houston, TX, for Plaintiff and Counterdefendant.

Kevin Thomas Jacobs, Andrew Jeremiah Yoder, Baker Botts LLP, Houston, TX, for Defendant and Counterplaintiff.

### MEMORANDUM OPINION AND ORDER

SIM LAKE, District Judge.

Plaintiff, J.D. Fields & Company, Inc. ("J.D. Fields"), brings this action against defendant, United States Steel International, Inc. ("USSI"), alleging breach of contract, promissory estoppel, and fraud concerning two transactions involving the sale of steel pipe. USSI brings a counterclaim against J.D. Fields alleging breach of contract for a third transaction involving the sale of steel pipe. Pending before the court are USSI's Motion for Summary Judgment (Docket Entry No. 22) and Plaintiff, J.D. Fields' Partial Motion for Summary Judgment on Its Breach of Con-

tract Claim (Docket Entry No. 24). For the reasons explained below, the court will grant USSI's Motion for Summary Judgment regarding J.D. Fields' claims for breach of contract, promissory estoppel, and fraud. The court will also partially grant USSI's Motion for Summary Judgment on its counterclaim, concluding that J.D. Fields is liable to USSI for breach of contract, but also concluding that USSI has not established its damages as a matter of law. The court will deny J.D. Fields' Partial Motion for Summary Judgment.

## I. Factual and Procedural Background

This action concerns three transactions for the sale of steel pipe that took place between J.D. Fields and USSI between February and May of 2008. J.D. Fields is a distributor of steel products and serves as a conduit between manufacturers and end-users. USSI markets and sells steel products manufactured at domestic steel mills for international sale. USSI is a subsidiary of the United States Steel Corporation ("U.S. Steel").

Before the three disputed transactions at issue J.D. Fields purchased steel products from USSI on at least thirty occasions between 2003 and 2008, for a combined total of more than $19.9 million in sales.[1] USSI asserts that the general course of dealings for these sales was as follows: (1) J.D. Fields sent USSI a request for a price quotation ("RFQ") for a given product, (2) USSI sent J.D. Fields a price quotation, (3) J.D. Fields sent USSI a purchase order, (4) USSI sent J.D. Fields an order acknowledgment, and (5) USSI shipped the product and sent J.D. Fields an invoice.[2] USSI has produced copies of the documents pertaining to its transactions with J.D. Fields.[3] These documents appear to confirm that the general course of business between J.D. Fields and USSI was as USSI has described. J.D. Fields has asserted that USSI had an "inconsistent pattern of delivering its acknowledgments," but has not provided any evidence that the general course of dealing between the parties was not as USSI describes.[4]

The main issue in this action is when in the parties' course of dealing did a contract form.

### A. The First Disputed Transaction: Purchase Order 45850

The first of the transactions giving rise to this action began on February 6, 2008, when Guillermo Moll of J.D. Fields sent an RFQ to USSI sales representative Kris Blackman seeking "price and delivery options" for 800 feet of a type of seamless carbon steel pipe.[5] After a brief e-mail exchange specifying the destination of the product, Blackman responded that day by e-mail:

I can offer the following:

800 FT—16″ OD X 0.844″ WT (SCH80) $2133/mt ($132.30/ft)

Subject to heat lot accumulation 100 tons

Net 30 days

---

1.  Contracts with J.D. Fields & Co., Exhibit 14 to United States Steel International Inc.'s Motion for Summary Judgment ("USSI's Motion"), Docket Entry No. 22, p. 3.

2.  USSI's Motion, Docket Entry No. 22, p. 4.

3.  Exhibit 14 to USSI's Motion, Docket Entry No. 22.

4.  Supplemental Affidavit of Guillermo Moll, Appendix E to Plaintiff, J.D. Fields' Response to Defendant USSI's Motion for Summary Judgment ("J.D. Fields' Response"), Docket Entry No. 31, ¶ 9.

5.  E-mail from Guillermo Moll to Kris Blackman, February 6, 2008, Exhibit 15 to USSI's Motion, Docket Entry No. 22.

Quote Valid for 14 days

Delivery: Rolling end of March [6]

Moll then requested a modification in the steel specifications, and Blackman responded with a new price quote of "$2205/mt ($136.74/ft)." [7] On February 11, 2008, Moll faxed Blackman a purchase order, P.O. 45850, for 880 feet at a unit price of $136.74 per foot. [8] The parties do not dispute that 880 feet of the specified type of pipe requires approximately 60 tons of steel, nor do they dispute that "[S]ubject to heat lot accumulation 100 tons" means that the steel mill will only roll the steel in a batch of at least 100 tons. On February 14, 2008, Moll e-mailed Blackman, "Please advise when is the expected rolling for the subject PO." [9] Blackman responded:

The mill has gotten back with me ... this material is subject to a heat lot of 100 tons and has to be rolled. This material is subject to roll at the mill first part of April. Please let me know if we can proceed with the order of 100 tons and if so I will need a revised PO. [10]

It is undisputed that Moll never sent a revised purchase order requesting the steel pipe in a batch of at least 100 tons. [11] It is also undisputed that USSI never sent J.D. Fields an order acknowledgment regarding this order. [12]

On March 26, 2008, Moll e-mailed Blackman:

Per our conversation of last Wednesday pertaining the subject purchase order, could you please provide us with an update on the heat-lot accumulation and where this order stands, including the increase? Also, please send to us an order confirmation form [sic] the mill. [13]

Blackman responded:

I have ran [sic] my traps and have not found any other order to piggy back on, so that means 100 tons minimum and I can not [sic] deliver this until August 08 and is subject to a price increase. Let me know how you would like to proceed. [14]

Moll replied:

[W]e are looking into increasing our order to the point you have the minimum 100 tons; have you received any other orders for this size? Please advise when we can have the material rolled considering that we will reach the 100 tons. [15]

Moll testified in his deposition that he also discussed the order with Blackman on the phone and stated that "if need be, we will go to 100 tons." [16] As stated above, Moll

**6.** E-mail from Kris Blackman to Guillermo Moll, February 6, 2008, Exhibit 16 to USSI's Motion, Docket Entry No. 22.

**7.** E-mail from Kris Blackman to Guillermo Moll, February 6, 2008, Exhibit 17 to USSI's Motion, Docket Entry No. 22.

**8.** Purchase Order No. 45850, Exhibit 18 to USSI's Motion, Docket Entry No. 22.

**9.** E-mail from Kris Blackman to Guillermo Moll, February 14, 2008, Exhibit 19 to USSI's Motion, Docket Entry No. 22.

**10.** *Id.*

**11.** Deposition of Guillermo Moll, Exhibit 2 to USSI's Motion, Docket Entry No. 22, pp. 235 line 2—236 line 3.

**12.** *Id.* at pp. 248 line 18—249 line 13.

**13.** E-mail from Guillermo Moll to Kris Blackman, March 26, 2008, Exhibit 20 to USSI's Motion, Docket Entry No. 22.

**14.** E-mail from Kris Blackman to Guillermo Moll, March 26, 2008, Exhibit 21 to USSI's Motion, Docket Entry No. 22.

**15.** E-mail from Guillermo Moll to Kris Blackman, March 26, 2008, Exhibit 22 to USSI's Motion, Docket Entry No. 22.

**16.** Deposition of Guillermo Moll, Exhibit 2 to USSI's Motion, Docket Entry No. 22, p. 247 lines 18–19.

never sent a revised purchase order for an order of 100 tons or greater, and USSI never sent J.D. Fields an order acknowledgment regarding this order.

On April 24, 2008, Moll sent an e-mail to Tom Verellen, Blackman's supervisor at USSI, requesting a status update and order acknowledgment regarding P.O. 45850 and P.O. 46110 (discussed below).[17] Verellen responded that Blackman would respond when he returned to town the following week.[18] Blackman's next e-mail to Moll, sent on May 30, 2008, stated:

> I will attempt to address the issues below. As I stated in our last phone conversation about 4–5 weeks ago concerning these PO's, we were in the middle of a price increase and not taking orders at that time. Both of these PO's fell into these categories.

> We still are currently not taking order because 1 our mills are full and 2 we have consumed all of our tons for export. I apologize for the inconvenience or misunderstanding but I recall stating in our conversation on the phone that these orders were never excepted [sic] nor acknowledged therefore, we do not have these orders in our system and do not have the material available at this time.[19]

In the following few days Moll and Blackman had an e-mail exchange in which Moll argued that the orders should have been accepted, and Blackman repeated that the orders had not been acknowledged and would not be filled.[20] On June 2, 2008, Blackman concluded, "We will not be accepting orders from JD Fields from this point forward."[21]

## B. The Second Disputed Transaction: Purchase Order 46110

The second disputed transaction began on March 5, 2008, when Moll e-mailed Blackman to request price quotes on two types of seamless pipe to be delivered FOB Port of Houston.[22] Moll sent another e-mail on March 11, 2008, and Blackman responded on March 13, 2008:

> We can offer
>
> $2000/nt for the 12″
>
> $2040/nt for the 16″
>
> June or sooner
>
> FCA houston
>
> Net 30 days
>
> Valid for 14 days [23]

On March 18, 2008, Moll faxed Blackman Purchase Order 46110, ordering 3,260 feet of a specified sixteen-inch pipe at $2,040 per net ton ($84.507 per foot) and 2,890 feet of a specified twelve-inch pipe at $2,000 per net ton ($136.740 per foot).[24] It is not clear what happened to P.O. 46110 after Moll faxed it. Blackman has stated that the order may have "fallen through the cracks" and was never processed at

---

**17.** E-mail from Guillermo Moll to Thomas Verellen, April 24, 2008, Exhibit 26 to USSI's Motion, Docket Entry No. 22.

**18.** E-mail from Thomas Verellen to Guillermo Moll, April 24, 2008, Attachment 3 to Exhibit A to Plaintiff, J.D. Fields' Partial Motion for Summary Judgment on Its Breach of Contract Claim ("J.D. Fields' Motion"), Docket Entry No. 24.

**19.** E-mail from Kristofer Blackman to Guillermo Moll, June 2, 2008, Attachment 4 to Exhibit A to J.D. Fields' Motion, Docket Entry No. 24.

**20.** *Id.*

**21.** *Id.*

**22.** E-mail from Kris Blackman to Guillermo Moll, March 13, 2008, Exhibit 23 to USSI's Motion, Docket Entry No. 22.

**23.** *Id.*

**24.** Purchase Order No. 46110, Exhibit 24 to USSI's Motion, Docket Entry No. 22.

USSI.[25] It is undisputed that Moll never received an order acknowledgment concerning the order.[26]

As discussed above concerning P.O. 45850, Blackman notified Moll on May 30, 2008, that P.O. 45850 and P.O. 46110 had not been entered into USSI's system, and that USSI did not plan to fill the orders.[27]

## C. The Third Disputed Transaction: Purchase Order 1545911

The third disputed transaction is different from the first two in that USSI acknowledged the order and shipped it to J.D. Fields; the dispute arises from J.D. Fields' failure to pay for it. In an e-mail chain starting on February 8, 2008, Todd Fagan of J.D. Fields requested price quotes from USSI's Martin Leland for various types of pipe.[28] After the e-mail was forwarded and responded to by various parties, USSI's Seth Ulrich provided a quote for 5,000 feet of a specified type of ten-inch pipe at $1,145 per net ton, available in mid-June.[29] On February 19, 2008, J.D. Fields' Doug McKenzie sent P.O. 1545911 to Ulrich to order 5,000 feet of the specified ten-inch pipe at a cost of $36.92 per foot ($1,145.00 per net ton) to be delivered in mid-June.[30] On February 26, 2008, USSI issued an order acknowledgment for P.O. 1545911, specifying an order for 4,951 feet of the specified pipe at $49.8185 per

foot for a total estimated charge of $246,651.39, with a "Promise Date" of June 13, 2008.[31] The order acknowledgment does not explain the increase in price per foot from the purchase order.

The pipe for P.O. 1545911 was shipped in two lots on June 5 and 6, 2008.[32] The invoices list charges for 4,951.3 feet of line pipe at $49.8185 per foot that total $246,666.34, as well as "Steel Surcharge" fees of $250/ton that total $39,913.65, for a total charge of $286,579.99.[33] It is undisputed that J.D. Fields accepted the pipe, and that it has not paid any of the invoiced fee. There is substantial dispute between the parties concerning the proper charge for this order. USSI asserts that the difference between the original quoted price and the invoiced price is due to price increases that USSI notified J.D. Fields about prior to shipping the pipes.

Both parties agree that the spring and summer of 2008 was a volatile time in the steel industry, with high demand driving up the costs of raw materials, energy, and transportation. USSI has produced a letter that it asserts it sent to all of its customers, including J.D. Fields, on January 23, 2008, stating:

> Effective with new orders to ship March 1, 2008 and later U.S. Steel Tubular Products will increase transaction prices

**25.** Deposition of Kristofer M. Blackman, Exhibit 8 to USSI's Motion, Docket Entry No. 22, p. 107 lines 22–25.

**26.** Deposition of Guillermo Moll, Exhibit 2 to USSI's Motion, Docket Entry No. 22, pp. 248 line 18—249 line 13.

**27.** E-mail from Kristofer Blackman to Guillermo Moll, June 2, 2008, Attachment 4 to Exhibit A to J.D. Fields' Motion, Docket Entry No. 24.

**28.** E-mail from Jerry Fields to Doug McKenzie, February 19, 2008, Exhibit M to J.D. Fields' Response, Docket Entry No. 31.

**29.** *Id.*

**30.** Purchase Order 1545911, Exhibit J to J.D. Fields' Response, Docket Entry No. 31.

**31.** Order Acknowledgment for P.O. 1545911, Exhibit 33 to USSI's Motion, Docket Entry No. 22, USSI00094.

**32.** Invoice Nos. 1086831 and 1086322, Exhibit 29 to USSI's Motion, Docket Entry No. 22.

**33.** *Id.*

for Line and Standard Pipe Products as follows:

ERW Standard and Line Pipe     $ 75/Ton
Seamless Standard and Line Pipe
   1.9″ OD through 16″ Od     $100/ton
   >16″ OD     $200/ton [34]

USSI has produced a second letter that it asserts it sent to its customers on February 20, 2008, stating:

U.S. Steel Tubular Products will increase the noncontract base price of Drawn and Hot Finish tubing six percent (6%) effective with all orders shipping after April 13, 2008. Previously placed orders with ship dates after April 13 will be adjusted to reflect this increase.[35]

On February 28, 2008, USSI announced a price increase of $150/ton for all shipments on April 1, 2008, or later.[36] On April 25, 2008, USSI announced a $250/ton surcharge for all material shipped between May 1, 2008, and June 30, 2008.[37]

J.D. Fields has refused to pay for this shipment, arguing that it is entitled to hold back the payment for P.O. 1545911 as a credit against the breach of contract damages that USSI allegedly owes it for USSI's failure to honor P.O. 45850 and P.O. 46110. J.D. Fields does not dispute that it ordered the pipe, that USSI shipped it, that J.D. Fields accepted it, or that J.D. Fields has made no payment for it. The disagreement concerning P.O. 1545911 is the proper amount that J.D. Fields owes for the shipment, and whether or not J.D. Fields has a right to withhold payment while its breach of contract action is pending.

### D. Procedural Background

J.D. Fields filed this action against U.S. Steel on October 16, 2008, alleging breach of contract and promissory estoppel regarding P.O. 45850 and P.O. 46110.[38] J.D. Fields seeks $992,003.91 in damages as well as attorneys' fees and equitable relief.[39] On November 11, 2008, J.D. Fields added USSI as a defendant.[40] On November 12, 2008, U.S. Steel moved for the case against it to be dismissed, as USSI was the proper defendant.[41] The court granted U.S. Steel's motion on February 6, 2009.[42] On December 3, 2008, USSI filed its counterclaim against J.D. Fields regarding non-payment of P.O. 1545911 as well as partial nonpayment of two other invoices.[43] On July 29, 2009, J.D. Fields moved for leave to file a second amended complaint including allegations of fraud and negligent misrepresentation against USSI.[44] On

---

34. Price Announcement, January 23, 2008, Exhibit 27 to USSI's Motion, Docket Entry No. 22, USSI00098.

35. Letter, February 20, 2008, Exhibit 27 to USSI's Motion, Docket Entry No. 22, USSI00099.

36. Price Announcement, February 28, 2008, Exhibit 27 to USSI's Motion, Docket Entry No. 22, USSI00100.

37. Price Announcement, April 25, 2008, Exhibit 27 to USSI's Motion, Docket Entry No. 22, USSI00101.

38. Original Complaint, Docket Entry No. 1, pp. 6–7.

39. *Id.* at 7–8.

40. First Amended Complaint, Docket Entry No. 7.

41. United States Steel Corporation's Motion to Dismiss or, in the Alternative, to Substitute Proper Party, Docket Entry No. 8.

42. Order Dismissing United States Steel Corporation and Substituting United States Steel International, Inc. as Defendant, Docket Entry No. 14.

43. Original Answer and Counter–Claims of Defendant United States Steel International, Inc., Docket Entry No. 10.

44. J.D. Fields' Memorandum in Support of Its Motion for Leave to File Its Second Amended Complaint, Docket Entry No. 20.

August 20, 2009, the court granted J.D. Fields' motion in part, permitting J.D. Fields to amend its complaint to allege fraud, but denying leave to add the negligent misrepresentation claim because it failed to state an actionable claim under Texas law.[45]

USSI filed a motion for summary judgment on July 31, 2009.[46] On the same day J.D. Fields moved for partial summary judgment on its contract claim regarding P.O. 46110.[47]

## II. *Standard of Review*

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment. Fed.R.Civ.P. 56(c). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not *negate* the elements of the nonmovant's case." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (*en banc*) (quoting *Celotex,* 106 S.Ct. at 2553–2554). If the moving party meets this burden, Rule 56(c) re-

quires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Id.* (citing *Celotex,* 106 S.Ct. at 2553–2554). In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when ... both parties have submitted evidence of contradictory facts." *Little,* 37 F.3d at 1075.

## III. *USSI's Motion for Summary Judgment*

USSI argues that it is entitled to summary judgment on all of the claims that J.D. Fields has asserted against it. After the court's grant of partial leave to amend (Docket Entry No. 28), J.D. Fields asserts the following claims: breach of contract concerning both P.O. 45850 and P.O. 46110, promissory estoppel concerning those same transactions, and fraud concerning those transactions.[48] USSI also seeks summary judgment concerning J.D. Fields' right to seek lost profits and attorneys' fees.

### A. J.D. Fields' Breach of Contract Claims

J.D. Fields argues that the price quotations Blackman e-mailed Moll on February 6, 2008, and March 13, 2008, were contract offers that J.D. Fields accepted when Moll sent P.O. 45850 and P.O. 46110, respective-

---

**45.** Order, Docket Entry No. 28.

**46.** USSI's Motion, Docket Entry No. 22.

**47.** J.D. Fields' Motion, Docket Entry No. 24.

**48.** Third Amended Complaint, Docket Entry No. 38, pp. 8–10.

ly. J.D. Fields argues that the language and terms of the e-mails constitute "firm offers" under the UCC such that a response within the specified time was all that was needed to create an enforceable contract.

USSI argues that the e-mailed price quotations were merely invitations to make an offer and that the purchase orders sent by Moll were offers, which USSI was free to accept or reject. USSI maintains that no contract is formed between USSI and its customers until the steel mill sends an order acknowledgment detailing the specifications of the order. Since USSI sent no order acknowledgments regarding P.O. 45850 or P.O. 46110, USSI argues that no contracts were formed between the parties concerning these orders, and therefore that J.D. Fields' breach of contract claims must fail as a matter of law.

### 1. *Applicable Law*

There is some dispute between the parties regarding whether Texas or Pennsylvania law applies to the contract negotiations in issue. USSI argues that Pennsylvania law governs the contract negotiations concerning P.O. 45850 and P.O. 46110 because USSI's Terms and Conditions of Sale, which are included on its order acknowledgments for sales of seamless pipe, explicitly state that Pennsylvania law governs.[49] This argument appears to be at odds, however, with USSI's central argument that no contract was created regarding these purchase orders because USSI never sent order acknowledgments for them. The court is not persuaded that a choice of law provision on a form J.D. Fields never received should necessarily govern. The choice of law regarding these negotiations is potentially complicated by questions of past dealings between the parties and the fac-

tual circumstances of the negotiations, but the court does not deem it necessary for present purposes to consider those questions. The parties do not dispute that the threshold question of contract formation is governed by UCC Article 2, or that both Texas and Pennsylvania have adopted UCC Article 2 in substantially similar form. Since both parties have cited in their briefs to the relevant provisions of the UCC as codified in Texas, and the court does not believe that the result would be different under Pennsylvania law, the court will consider the questions of contract formation under Texas law.

#### (a) Contract Formation

■ In Texas "the essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir.2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex.App.-Houston [14th Dist.] 2005, pet. denied)). USSI focuses on the first element, arguing that J.D. Fields cannot establish that a contract was formed between the parties concerning P.O. 45850 and P.O. 46110.

Article 2 guides courts in determining when a contract has been formed. *See Axelson, Inc. v. McEvoy–Willis*, 7 F.3d 1230, 1232 (5th Cir.1993) (applying Tex. Bus. & Com.Code §§ 2.201–2.210 to determine whether and when a contract was formed). The Code's general statement on contract formation is that "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes

49. USSI's Motion, pp. 8–9.

the existence of such a contract." TEX. BUS. & COM.CODE § 2.204(a). The existence of agreement between the parties is thus the central concern. Courts are guided by common law principles of offer and acceptance when determining whether a contract was validly formed. *See Crest Ridge Const. Group, Inc. v. Newcourt Inc.,* 78 F.3d 146, 152 (5th Cir.1996) ("As the Code itself notes, common law principles of law and equity continue to supplement its provisions." [citing TEX. BUS. & COM.CODE § 1.103] ). Texas courts have stated that a valid and binding contract is formed by: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Critchfield v. Smith,* 151 S.W.3d 225, 233 (Tex.App.-Tyler 2004, pet. denied).

The parties disagree about whether Blackman's e-mailed price quotation was an offer or merely an invitation to offer. The UCC does not define the term "offer." *Nordyne, Inc. v. International Controls & Measurements Corp.,* 262 F.3d 843, 846 (8th Cir.2001). Rather, "courts ... must continue to first look to the common law to determine which communication constituted the 'offer' in order to apply [the contract formation principles of the UCC]." *Gulf States Utils. Co. v. NEI Peebles Electric Prods., Inc.,* 819 F.Supp. 538, 549 (M.D.La.1993). The Fifth Circuit has defined an offer as "an act that leads the offeree reasonably to believe that assent (i.e., acceptance) will conclude the deal." *Axelson,* 7 F.3d at 1233. *See also The Restatement (Second) of Contracts* § 24 (defining offer as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it").

(b) The Effect of Price Quotations

In this case, the court must determine whether a price quotation was a definite offer or was merely an invitation to make an offer. "Typically, a price quotation is considered an invitation for an offer, rather than an offer to form a binding contract." *E.C. Styberg Eng'g Co. v. Eaton Corp.,* 492 F.3d 912, 918 (7th Cir.2007); *accord Nordyne,* 262 F.3d at 846 ("The general rule is that a price quotation, such as one appearing in a catalogue or on a flyer, is not an offer, but is rather a suggestion to induce offers by others."). The Fourth Circuit has discussed the rationale for this rule:

Price quotations are a daily part of commerce by which products are shopped and commercial transactions initiated. Without more, they amount to an invitation to enter into negotiations, but generally they are not offers that can be accepted to form binding contracts. [citations omitted] It would bring an end to the competitive practice of shopping products if every quotation exposed the "quoter" to an enforceable contract on whatever terms the "quotee" chose, regardless of product availability. Typically, a seller's price quotation is an invitation for an offer, and the offer usually takes the form of a purchase order, providing product choice, quantity, price, and terms of delivery.

*Audio Visual Associates, Inc. v. Sharp Electronics Corp.,* 210 F.3d 254, 259 (4th Cir.2000).

Following the general rule that a price quotation is an invitation to make an offer, "the purchase order usually is the first document having the legal attributes of an offer." *Gulf States,* 819 F.Supp. at 549; *see also Dyno Const. Co. v. McWane, Inc.,* 198 F.3d 567, 572 (6th Cir.1999) (noting that "a buyer's purchase agreement submitted in response to a price quotation is

usually deemed the offer"). The UCC states that "an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods." Tex. Bus. & Com.Code § 2.206(a)(2).

### (c) Exceptions to the Rule

■ There are exceptions to the general rule that a price quotation is not an offer. A price quotation, if detailed enough, can constitute an offer capable of acceptance. *Crest Ridge*, 78 F.3d at 152; *see also Axelson*, 7 F.3d at 1232–33. For a price quotation to create a binding offer, however, it must reasonably appear from the price quote that assent to the quote is all that is needed to ripen the offer into a contract. *Crest Ridge*, 78 F.3d at 152; *Gulf States*, 819 F.Supp. at 549. A price quote that is subject to the seller's confirmation is not an offer because the buyer's assent will not consummate the contract. *See Axelson*, 7 F.3d at 1233 (under Texas law, a price quotation requiring seller to accept an order could not be an offer, but only an invitation for an offer). In essence, such qualifying language converts what could have been an offer into a proposal or preliminary negotiation. *Crest Ridge*, 78 F.3d at 152.

■ The UCC treats certain types of offers as "firm offers," which are irrevocable for a stated period. The relevant provision provides:

> Firm Offers: An offer by a merchant to buy or sell goods in a signed writing which by its terms gives assurance that it will be held open is not revocable, for lack of consideration, during the time stated or if no time is stated for a reasonable time. Tex. Bus. & Com.Code § 2.205.

This statutory language refers to an offer, not a price quotation. The significance of this distinction in the present action is that while the presence of a stated period of validity in a price quotation may be relevant to whether that quotation is in fact an offer, it does not by itself establish that the price quotation is a firm offer. The key test for whether a price quote creates a binding offer is the one articulated in *Crest Ridge*, that is, whether it reasonably appears from the price quote that assent to the quote is all that is needed to ripen the offer into a contract. *Crest Ridge*, 78 F.3d at 152.

### 2. Analysis

■ The central dispute between the parties is whether Blackman's e-mails to Moll were binding offers such that Moll's purchase orders formed enforceable contracts. In both of the contested transactions Moll requested a price quotation and Blackman e-mailed Moll price quotations for the specified products. These e-mails included the price per ton for the product, the approximate delivery date, the payment due date, and a statement that the quote was valid for fourteen days. The parties disagree on whether the e-mailed quotations should be considered price quotations or firm offers.

As stated above, the general rule is that a price quote is not an offer, but an invitation to make an offer. A price quote only creates a binding offer if it reasonably appears from the price quote that assent to the quote is all that is needed to ripen the offer into a contract. *Crest Ridge*, 78 F.3d at 152. The key question then, is whether it reasonably appeared to Moll, after receiving Blackman's e-mails, that all he needed to do was assent to the terms stated in the e-mails to create binding contracts.

### (a) J.D. Fields' Position: The E-mails Were Offers

Some factors weigh in favor of construing the e-mails as offers. The e-mails

contained specific details about the terms of the transaction: (1) each e-mail specifies a price per ton of a specific type of steel pipe; (2) each e-mail contained term of payment information ("Net 30 days"); (3) each e-mail specified a general delivery time; and (4) each e-mail specified a period of validity for the quoted price. Depending on the expectations of the parties involved, providing a price quotation for a specific type of product, along with payment and approximate time of delivery, could be sufficient to create a binding offer.

In addition, Blackman uses the phrases "I can offer" and "We can offer" in his price quotation e-mails. While this terminology might weigh generally in favor of J.D. Fields' interpretation, it does not weigh strongly, since such language may be equally consistent with a price quotation. More significant for J.D. Fields' position is the absence of any qualifying language in the e-mails stating that the price quotes were subject to USSI's confirmation, or noting that the ultimate acceptance of any purchase order would be decided by the steel mill. The Fifth Circuit has stated that such qualifying language can prevent a price quote from becoming an offer. *See Axelson,* 7 F.3d at 1233.

### (b) USSI's Position: The E-mails Were Not Offers

A number of considerations weigh against construing the e-mails as offers. First, while the e-mails contained specific information about price, product, payment, and approximate time of delivery, they lacked certain information contained on the purchase orders that may have been essential to create a binding offer: the specific shipping location, the mode of shipping, the legal terms and conditions that would govern the order, and, most importantly, the quantity ordered. The nature of the transaction makes quantity a very significant—perhaps crucial—component of the offer. Since the steel mill would have to fabricate the pipes in a technologically complex process affected by the availability of raw materials and the capacity of the steel mill itself, it is logical that USSI would not have wished to commit itself to a contract that was either too small to be profitably rolled or too large for the mill to handle. The note in Blackman's February 6, 2008, e-mail stating, "[S]ubject to heat lot accumulation 100 tons," indicates that quantity was a significant aspect of the transaction to USSI. Since Moll was presumably familiar with the economic and physical limitations of the steel-rolling process, it is unlikely that he would have expected USSI to assent to a purchase order for any quantity of steel, no matter how large or small. Therefore, the absence of a specified quantity in Blackman's e-mails may have made it unreasonable for Moll to conclude that all he needed to do was assent to the terms stated in the e-mails to create binding contracts.

Second, the informality of the e-mailed price quotation is significant, considering the high-dollar value and relative complexity of the transactions in question. J.D. Fields was not looking to purchase something out of existing inventory, but rather was attempting to contract for USSI to fabricate many tons of a specific type of steel pipe. While formality is not required to make a binding offer, the context of the message is relevant to what a recipient could have reasonably concluded from it. It is significant that J.D. Fields submitted the first printed form. The Fifth Circuit has noted, "In general, whoever sends the first form is usually considered the offeror." *Crest Ridge,* 78 F.3d at 152. This consideration of formality is also relevant to the premise that "the purchase order usually is the first document having the

legal attributes of an offer.". *Gulf States,* 819 F.Supp. at 549. Considering the complex nature of the transaction and the relative informality of Blackman's e-mails, it may not have been reasonable for Moll to conclude that assent to the quote is all that was needed to ripen the offer into a contract.

### (c) Industry Custom

A third consideration weighing against construing the e-mails as offers is industry custom. The UCC recognizes the importance of industry custom in determining what a party's reasonable expectations might be. TEX. BUS. & COM.CODE § 1.303(c). USSI asserts that it is the custom in the tubular steel industry that a purchase order constitutes an offer, and that the offer is not accepted until it is acknowledged by the steel mill. USSI points to a number of pieces of evidence to support this assertion. First, Moll acknowledged in his deposition that, generally speaking, price quotes for steel pipe are subject to mill availability.[50] Second, Blackman in his deposition asserted, "[T]he mill has the final say. Anybody in this industry knows exactly what I'm talking about when the mill says they have the final say."[51]

Third, USSI has presented the affidavit of Charlie Martin Leland, Jr., who worked in the steel industry for 43 years and was Resident Sales Manager at U.S. Steel Tubular Products during the period in which the disputed transactions occurred. Le-

land states that it is standard in the industry for a scheduler at a steel mill to review every purchase order before issuing an order acknowledgment, and that the order acknowledgment "is essential because it reflects our contract with the customer."[52] Leland explains that the final approval of the contract terms must come from the mill because only the mill scheduler knows whether the mill has the capacity to fabricate the specified products or at what date the mill will be able to ship a given product.[53] Leland states that in his experience USSI's customers understand the importance of the order acknowledgments.[54] Leland further states that he personally told Moll and other employees of J.D. Fields that "until the mill issues the Order Acknowledgment, there is not a binding transaction."[55]

USSI also presents the affidavit of Thomas Verellen, who has worked in the steel industry for twenty-nine years and was USSI's manager of international sales at the time of the disputed transactions. Verellen states that a purchase order cannot be accepted until it has been reviewed by the mill scheduler because "[i]f the mill did not have the ability to review and coordinate orders from these various sources (including the right to reject orders), then the mill very easily could result in chaos with the sales representatives committing the mill without knowledge or control over the mill's production capacity."[56] Verellen also asserts that in his

**50.** Deposition of Guillermo Moll, Exhibit 2 to USSI's Motion, Docket Entry No. 22, p. 274 lines 4–13.

**51.** Deposition of Kristofer Blackman, Exhibit 2 to USSI's Motion, Docket Entry No. 22, p. 93 lines 21–24.

**52.** Affidavit of Charlie Martin Leland, Jr., Exhibit 2 to Appendix of Exhibits & Authorities Cited in USSI's Response to J.D. Fields' Partial Motion for Summary Judgment ("Appen-

dix to USSI's Response"), Docket Entry No. 30, ¶¶ 6–8.

**53.** *Id.* ¶ 6.

**54.** *Id.* ¶ 8.

**55.** *Id.* ¶ 9.

**56.** Affidavit of Thomas J. Verellen, Exhibit 4 to Appendix to USSI's Response, Docket Entry No. 30, ¶ 7.

experience USSI's customers understand that a purchase order must be reviewed by the mill before it is accepted.[57]

The court concludes that the industry custom in the tubular steel industry is that a buyer's purchase order is generally an offer, which the steel mill may accept either through acknowledgment or performance. J.D. Fields has not provided evidence that the industry custom is different than what Blackman, Leland, and Verellen have described, and Moll's deposition generally confirms their descriptions. The court concludes, therefore, that, given Moll's exposure to steel industry customs, it would have been unreasonable for him to conclude from Blackman's e-mails that all he needed to do to create binding contracts was assent to the terms stated in the e-mails.

### (d) Course of Dealing

Finally, USSI points to the parties' course of dealing, arguing that the procedures followed by J.D. Fields and USSI in previous transactions should have made clear to Moll that Blackman's e-mails were not offers, but invitations to make an offer. The UCC considers a course of dealing, which it defines as "a sequence of conduct concerning previous transactions between the parties," to be relevant for establishing a common basis of understanding between the parties and for interpreting their conduct given that common basis. TEX. BUS. & COM.CODE § 1.303(b).

USSI has produced evidence establishing that over a course of at least thirty transactions between 2003 and 2008 USSI and J.D. Fields followed an essentially similar course of dealing: (1) J.D. Fields sent USSI an RFQ for a given product; (2) USSI sent J.D. Fields a price quotation; (3) J.D. Fields sent USSI a purchase order; (4) USSI sent J.D. Fields an order acknowledgment; and (5) USSI shipped the product and sent J.D. Fields an invoice.[58] USSI has also produced evidence that J.D. Fields requested order acknowledgments after sending a purchase order on at least six occasions.[59] This course-of-dealing evidence suggests that there was a common understanding between the parties that order acknowledgments are an essential part of the contract process.

J.D. Fields has not presented any evidence that the general course of dealing between the parties was not as USSI describes. J.D. Fields disputes USSI's interpretation of the course of dealing, however, arguing that the record concerning P.O. 45497, which occurred immediately prior to the disputed transactions at issue in this action, establishes that on at least one prior occasion a contract formed between the parties before USSI issued an order acknowledgment.[60] In that transaction J.D. Fields submitted P.O. 45497 for an order of seamless steel pipe in 35' lengths on December 6, 2007.[61] In early January of 2008 USSI notified J.D. Fields that it had secured billets to manufacture the pipe, but that because of the length of the billets it could only manufacture 30' lengths.[62] J.D. Fields submitted a revised purchase order on January 11, 2008, and USSI sent J.D. Fields an order acknowledgment on February 6, 2008.[63] The pipe

---

**57.** *Id.* ¶ 11.

**58.** Exhibit 14 to USSI's Motion, Docket Entry No. 22.

**59.** Exhibit 13 to Appendix to USSI's Response, Docket Entry No. 30.

**60.** J.D. Fields' Response, Docket Entry No. 31, pp. 6–7.

**61.** *Id.* at 6.

**62.** *Id.*

**63.** *Id.* at 7.

was shipped approximately two months later.[64] J.D. Fields argues that a contract was formed between the parties by the purchase order on December 6, 2007, and that USSI's procurement of steel billets to fill the order prior to January 11, 2008, proves that USSI considered it an enforceable contract at that time, even though USSI had not yet issued an order acknowledgment.

J.D. Fields' argument is not persuasive. Procuring raw materials in order to fill an anticipated contract does not in itself create a contract. If that were the law, parties would unwittingly make contracts all the time that they might not be able to fill. The example of P.O. 45497, rather than supporting J.D. Fields' position, makes clear why it would be unworkable for a purchase order alone to bind USSI. If USSI had been bound by J.D. Fields' December 6, 2007, purchase order, it would have been committed to provide 35' lengths of pipe, when as it turned out it was only able to procure billets suitable for 30' lengths of pipe. This intrusion of the physical realities of steel milling into the contract process makes clear why USSI asserts that it does not deem a contract to have been formed until the mill schedulers, having determined that the mill can meet the order, issue an order acknowledgment. In any event, the chronology of P.O. 45497 follows the general course of dealing that USSI has described, and it therefore provides no reason to believe that the parties did not consider the order acknowledgment to be an essential part of the contract process.

The course-of-dealing evidence supports USSI's position that its price quotations were invitations to offer, that J.D. Fields' purchase orders were offers, and that USSI accepted those offers by sending order acknowledgments. The course-of-dealing evidence establishes that it would not have been reasonable for Moll to conclude from Blackman's e-mailed price quotes that all he would need to do to create a binding contract would be to assent to the terms of the e-mail.

### 3. *Conclusion*

USSI has presented compelling evidence that it would not have been reasonable for Moll to conclude from Blackman's e-mailed price quotes that assent to the quotes was all that was needed to ripen the offers into contracts. First, the lack of a specified quantity of steel pipe in Blackman's e-mail should have given the appearance to Moll that USSI would need to approve at least that aspect of his purchase order before a contract could form. Second, the informality of the e-mailed message, given the complexity and high-dollar value of the transaction, would have made it appear less likely to Moll that his assent to the e-mail's terms would be sufficient to create a contract. Third, steel industry custom is that purchase orders are offers, which a steel mill may accept or reject after considering the purchase order against the mill's capacity and the availability of raw materials. Fourth, the course of dealing between J.D. Fields and USSI shows that USSI issued an order acknowledgment prior to shipping the product in more than thirty transactions between the parties prior to the disputed transactions, which should have given Moll fair warning that USSI considered its order acknowledgments to be an essential part of the contract process.

Given these considerations, the court concludes that it would not have been reasonable for Moll to have concluded from Blackman's e-mails that his assent to the terms of the e-mails would form a contract.

---

64. *Id.*

Therefore, under the *Crest Ridge* test the e-mails were not offers but rather invitations to offer, and J.D. Fields' purchase orders were offers that USSI was free to reject. Since J.D. Fields has provided no evidence that USSI accepted these offers, and since USSI denies that it accepted them, the court concludes that USSI did not accept the offers. Therefore, there were no binding contracts between the parties regarding P.O. 45850 and P.O. 46110. Since there were no contracts, J.D. Fields' breach of contract claims must fail as a matter of law. USSI is therefore entitled to summary judgment on J.D. Fields' breach of contract claims. For the same reasons, J.D. Fields' Partial Motion for Summary Judgment on its Breach of Contract Claim (Docket Entry No. 24) will be denied.

**B. J.D. Fields' Promissory Estoppel Claims**

J.D. Fields argues in the alternative that it is entitled to damages concerning the transactions embodied in P.O. 45850 and P.O. 46110 on a theory of promissory estoppel.[65] J.D. Fields alleges that USSI promised J.D. Fields that it would sell pipe to J.D. Fields in the manner and at the price listed on Blackman's e-mailed price quotations, that J.D. Fields reasonably and substantially relied on USSI's promises to its detriment, and that J.D. Fields' reliance was foreseeable to USSI. Beyond the bare allegations in its complaint, J.D. Fields has not presented any legal argument or authority supporting its promissory estoppel claims.

USSI argues that it is entitled to summary judgment on J.D. Fields' promissory estoppel claims because (1) any purported reliance by J.D. Fields on USSI's oral

statements would not have been reasonable; (2) J.D. Fields has not identified any oral promises with respect to P.O. 46110; and (3) J.D. Fields' alleged expectation damages are not recoverable under a promissory estoppel theory.

*1. Applicable Law*

Under the theory of promissory estoppel a party that has failed to prove a legally sufficient contract, but has acted in reliance upon a promise to his detriment, may be compensated for his foreseeable, definite, and substantial reliance. *See Wheeler v. White,* 398 S.W.2d 93, 97 (Tex. 1965). The elements of a promissory estoppel claim are: (1) a promise, (2) reliance thereon that was foreseeable to the promisor, and (3) substantial reliance by the promisee to his detriment. *Miller v. Raytheon Aircraft Co.,* 229 S.W.3d 358, 378–79 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (citing *English v. Fischer,* 660 S.W.2d 521, 524 (Tex.1983)). The promisee's reliance must be both reasonable and justified. *Ortiz v. Collins,* 203 S.W.3d 414, 421 (Tex.App.-Houston [14th Dist.] 2006, no pet.).

*2. Analysis*

The first required element of a claim for promissory estoppel is the existence of a promise. USSI argues that J.D. Fields has not identified a single oral promise made by USSI concerning P.O. 46110 that is sufficient to support a claim for promissory estoppel. While Moll testified in his deposition that he had conversations with Blackman regarding P.O. 46110, he did not specify any promise made by Blackman or any other representative of J.D. Fields regarding that order.[66] Neither J.D. Fields' Response to USSI's Mo-

---

**65.** Third Amended Complaint, Docket Entry No. 38, ¶¶ 50–53.

**66.** Deposition of Guillermo Moll, Exhibit 2 to USSI's Motion, Docket Entry No. 22, pp. 275 line 8—277 line 25.

tion for Summary Judgment, Docket Entry No. 31, nor any of its other pleadings before the court have specified what promise regarding P.O. 46110 could be the basis for a claim of promissory estoppel. Therefore, the court concludes that J.D. Fields' promissory estoppel claim regarding P.O. 46110 fails as a matter of law for failing to meet the first element of a promissory estoppel claim.

Regarding P.O. 45850, Moll testified that Blackman made oral promises that Moll relied on to his detriment.

> [T]here was a continued conversation regarding this particular order that don't worry, we'll get it, not a problem … I was led to believe that this was reachable, that it was normal to reach … And I always relied on what they told me, and that's what I conveyed back and forth.[67]

J.D. Fields has not identified with specificity what statement of Blackman's Moll relied on, or what form that reliance took. Assuming that J.D. Fields is alleging that Blackman's oral representations amounted to a promise that the parties had a contract, and that Moll relied on that promised contract in his dealings with J.D. Fields' customers, Moll's testimony raises a fact question concerning the existence of a promise regarding P.O. 45850.

USSI argues, however, that J.D. Fields' alleged reliance cannot be considered reasonable as a matter of law. USSI argues that because Blackman's e-mail specified that the order was subject to a 100–ton minimum, and because J.D. Fields never submitted an order meeting this minimum, it was not reasonable for J.D. Fields to conclude that a contract existed between the parties, regardless of what Blackman may have said. J.D. Fields does not dispute that P.O. 45850 did not meet the minimum quantity specified in Blackman's e-mail, nor does it dispute that it never submitted a revised purchase order that met the minimum requirement. Even accepting J.D. Fields' assertion that it believed that a purchase order constituted an acceptance of USSI's offer—a belief which, for the reasons stated above, the court has found to be unreasonable—J.D. Fields has never asserted that it submitted an order in compliance with the written terms of USSI's offer, i.e. an order meeting the 100–ton minimum. Courts have held that where vague oral statements contradict written contract terms, reliance upon those oral statements is not reasonable as a matter of law. *See Ameen v. Merck & Co., Inc.*, 226 Fed.Appx. 363, 374 (5th Cir.2007) ("[W]ith respect to promissory estoppel claims, vague oral assurances of future job security, such as that alleged here, are insufficient to modify an employee's at-will employment status."); *see also Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex.App.-Houston [14th Dist.] 2003) ("[R]eliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law.").

Since J.D. Fields has not specified in any of its pleadings or summary judgment briefs which statement it relied upon, the court concludes that it is fair to characterize the statements by Blackman that Moll allegedly relied on as "vague oral assurances." J.D. Fields has not presented any argument why it should have reasonably relied on such vague oral assurances rather than the written requirement of 100 tons in Blackman's e-mail, which J.D. Fields has asserted that it considered a contract offer. Therefore, the court concludes that it was not reasonable for J.D. Fields to rely on Blackman's statements to

**67.** *Id.* at pp. 233 line 12—234 line 9.

conclude that a contract existed between the parties, when by its own admission it never submitted an acceptance in compliance with the offer. Since J.D. Fields has failed to raise a fact question concerning the element of reasonable reliance concerning statements Blackman allegedly made about P.O. 45850, USSI is entitled to summary judgment on J.D. Fields' promissory estoppel claim.

### 3. *Conclusion*

For the reasons explained above, the court concludes that J.D. Fields has failed to raise valid promissory estoppel claims regarding P.O. 45850 and P.O. 46110. Therefore, USSI is entitled to summary judgment regarding those claims.

## C. J.D. Fields' Fraud Claim

J.D. Fields argues that it is entitled to damages from USSI on a theory of fraud. It alleges that USSI made material representations that it would sell pipe to J.D. Fields at a stated price, that those representations were false, that USSI knew that the representations were false or at least were made recklessly, that USSI made the representations with the intent that J.D. Fields act on them, that J.D. Fields relied on the representations, and that J.D. Fields has suffered damages as a result of relying on those representations.[68]

USSI's Motion for Summary Judgment (Docket Entry No. 22) does not address J.D. Fields' fraud claim; J.D. Fields' motion to add the claim was filed only two days before USSI filed its Motion for Summary Judgment, which occurred on the deadline for dispositive motions. USSI's Motion, however, makes clear that it seeks summary judgment on all of the claims J.D. Fields has brought against it. Given the arguments presented in the parties' pleadings, the court concludes that there is sufficient evidence in the record to consider the fraud claims in this opinion and order.

### 1. *Applicable Law*

■■■■ To prevail on a fraud claim a plaintiff must prove: (1) the defendant made a material misrepresentation that was false; (2) the defendant knew it was false when made or made it recklessly as a positive assertion without any knowledge of its truth; (3) defendant intended the plaintiff to act upon the representation; and (4) plaintiff actually and justifiably relied on the misrepresentation and suffered injury. *See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex.2001). In a fraudulent inducement claim the elements of fraud must be established as they relate to an agreement between the parties. *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex.2001). As with promissory estoppel, a plaintiff's reliance on the defendant's false statement must be reasonable. *Ortiz v. Collins*, 203 S.W.3d 414, 421 (Tex.App.-Houston [14th Dist.] 2006, no pet.).

### 2. *Analysis*

■■■ As with J.D. Fields' promissory estoppel claims, the court finds that J.D. Fields has failed to establish the element of reasonable reliance necessary for a fraudulent inducement claim. The misrepresentation that J.D. Fields alleges it relied on is that USSI would sell it pipe at a stated price.[69] This misrepresentation was presumably contained in the e-mailed price quotations that Blackman sent Moll as part of the negotiations that led to P.O. 45850 and P.O. 46110, since these are the only communications from Blackman in the record that discuss the price for these

---

**68.** Third Amended Complaint, Docket Entry No. 38, ¶¶ 54–63.

**69.** *Id.* ¶ 54.

transactions. As discussed above concerning J.D. Fields' breach of contract claims, the court has concluded that it was not reasonable, as a matter of law, for Moll to conclude that Blackman's e-mailed price quotations were binding offers. *See* Part III.A.3., above. Since these e-mails were properly construed as price quotations rather than offers, it was not reasonable for J.D. Fields to rely on them as if they were offers, that is, to conclude that contracts had been formed once J.D. Fields sent USSI purchase orders. Since this reliance was not reasonable, J.D. Fields' fraud claims fail as a matter of law.

This result is in accord with the commercial realities recognized by the general rule that a price quotation is not an offer. The point of this general rule is that price quotations and offers have different legal consequences: If a party states a price in an offer that it later fails to honor, it may owe contract damages, whereas if a party states a price in a price quotation that it later dishonors, it will not owe contract damages. Contract law recognizes this distinction in order to facilitate the negotiations that are essential for commerce. To allow a party to recast a price quotation as a false statement for which an action in fraud is appropriate would be to ignore the distinction that contract law has created between price quotations and offers, and would upset the expectations of commercial actors who rely on the premise that they can provide price quotations without fear of subjecting themselves to fraud liability.

### 3. *Conclusion*

For the reasons explained above, the court concludes that J.D. Fields has failed

to raise a material question of fact concerning the element of reasonable reliance on a misrepresentation that is necessary to establish a claim for fraud. Since J.D. Fields cannot establish a required element of its claim, USSI is entitled to summary judgment on J.D. Fields' claim for fraud.

### IV.  *USSI's Counterclaim*

USSI has asserted a counterclaim against J.D. Fields for breach of contract damages resulting from J.D. Fields' failure to pay for the pipe purchased under P.O. 1545911.[70] In the alternative, USSI seeks to recover under the theory of unjust enrichment. USSI seeks damages of $286,579.99. In addition, USSI seeks to recover its attorneys' fees, asserting that it is entitled to such fees both under the contract governing the transactions and under Texas contract law. USSI argues that it is entitled to judgment as a matter of law on its counterclaim because there are no material facts in issue regarding whether a contract existed, whether USSI performed under the contract, whether J.D. Fields has failed to perform, or whether USSI has suffered damages as a result.

J.D. Fields argues that summary judgment is inappropriate because there are material facts in issue concerning whether USSI's prior breach excused J.D. Fields' performance and whether USSI suffered any damages.[71]

### A.  **Applicable Law**

The parties are in agreement that Texas law governs the dispute regarding P.O. 1545911.[72] In Texas "the essential ele-

---

**70.** Original Answer and Counter–Claims of Defendant USSI, Docket Entry No. 10, ¶¶ 57–84.

**71.** J.D. Fields' Response, Docket Entry No. 31, pp. 18–19.

**72.** Both parties cite to Texas law concerning this dispute. *See id.* and USSI's Motion, Docket Entry No. 22, pp. 24–25.

ments of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir.2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex.App.-Houston [14th Dist.] 2005, pet. denied)).

### B.  Analysis

J.D. Fields does not dispute that a valid contract was formed concerning P.O. 1545911. Nor does it dispute that USSI shipped the steel pipe specified in the contract, that J.D. Fields accepted it, or that J.D. Fields has not made any payment for it. J.D. Fields argues that its failure to pay is excused by USSI's prior material breach. J.D. Fields also argues that USSI has not suffered any damages.

The court is not persuaded by J.D. Fields' arguments for several reasons. J.D. Fields incorrectly applies Tex. Bus. & Com.Code Ann. § 2.717 to argue that it is entitled to deduct its pending payment for P.O. 1545911 against the contract damages it is owed for USSI's alleged breach of P.O. 54850 and P.O. 46610. This argument fails because the court has concluded that USSI did not breach those contracts. Moreover, even if USSI had breached those contracts, Tex. Bus. & Com.Code Ann. § 2.717 only allows a party to deduct "damages resulting from any breach of the contract from any part of the price still due under the same contract." Since J.D. Fields has provided the court with no reason to conclude that P.O. 1545911 was part of the same contract as P.O. 54850 and P.O. 46610, the court concludes that P.O. 1545911 involved a separate contract. Therefore, even if J.D. Fields were entitled to damages concerning those other transactions, it would not be entitled to withhold payment on P.O. 1545911.

J.D. Fields also appears to argue that USSI breached the contract by increasing the contract price from that of the original price quotation. J.D. Fields provides no legal argument for why this price increase would constitute breach under Texas contract law. Furthermore, J.D. Fields accepted the pipe after receiving notice in USSI's order acknowledgment of what the price of the pipe would be. Tex. Bus. & Com.Code Ann. § 2.607(a) states, "The buyer must pay at the contract rate for any goods accepted." J.D. Fields has never disputed that it accepted the pipe.

J.D. Fields' second argument is that there is a fact question concerning whether USSI suffered any damages. This argument is implausible. USSI manufactured and shipped approximately 160 tons of steel pipe to J.D. Fields on this contract, and to this day has received no payment for it. J.D. Fields has acknowledged that it owes USSI at least $182,804.52 on the contract; it only disputes USSI's contention that the proper contract price is $286,579.99.[73] There is no fact question on whether USSI has suffered damages from J.D. Fields' failure to pay.

Since USSI has presented evidence establishing all of the elements of a breach of contract claim, and J.D. Fields has failed to raise any material question of fact concerning whether these elements have been met, USSI is entitled to judgment as a matter of law that J.D. Fields breached the contract concerning P.O. 1545911.

### C.  Damages

██  J.D. Fields argues that it owes $182,804.52 for the pipe shipped pursuant to P.O. 1545911, while USSI argues that

73. J.D. Fields' Response, Docket Entry No.    31, p. 20.

the proper price is $286,579.99. J.D. Fields' figure of $182,804.52 is the amount specified on P.O. 1545911, which J.D. Fields submitted on February 19, 2008.[74] USSI's figure of $286,579.99 is the sum of the steel charges at the rate specified in USSI's order acknowledgment issued on February 26, 2008 ($246,666.34),[75] and the steel surcharges that USSI announced on April 25 ($39,913.65).[76] The two questions in issue are (1) whether the proper price per foot is the lower price specified in Blackman's e-mail and the purchase order, or the higher price specified on the order acknowledgment and the invoices, and (2) whether the steel surcharges are a proper component of the contract price.

J.D. Fields argues that the contract price should be that specified in its purchase order. As the court has explained above, the purchase order was an offer, which USSI was free to accept or reject. USSI's order acknowledgment on February 26, 2008, would appear to have been an acceptance of that offer, except that its specified price per foot was approximately 35 percent greater than the price specified in P.O. 1545911 ($49.8185 per foot versus $36.92 per foot). This material discrepancy in price arguably makes the order acknowledgment a counter offer, which J.D. Fields accepted when it accepted the pipe. Alternatively, the order acknowledgment could be construed as an acceptance, with the additional price component an additional term that J.D. Fields may have accepted by not objecting to the additional term within a reasonable time. *See* Tex. Bus. & Com.Code Ann. § 2.207(b) ("The additional terms are to be construed as

proposals for addition to the contract. Between merchants such terms become part of the contract unless: ... (3) notification of objection to them ... is given within a reasonable time after notice of them is received."). Although J.D. Fields did object to the price after accepting the pipe, there may be a fact question as to whether J.D. Fields objected within a reasonable time. The parties have not briefed this issue.

The court is not persuaded that the amount alleged by USSI is necessarily the proper measure of damages as a matter of law. While USSI provides the documents upon which its calculation of damages is based, it does not provide the legal basis for concluding that those documents define the contract rate. USSI asserts in its pleadings that it accepts a contract when it issues an order acknowledgment, but it does not explain what happens either in USSI's course of dealing or in the industry when an acceptance differs materially in price from the buyer's offer. Nor does USSI provide the legal basis for concluding that the surcharge announcement it issued on April 25, 2008, became a binding part of its preexisting contracts with J.D. Fields. USSI has not, for example, provided conclusive evidence that such surcharges are routinely accepted in the industry, or that similar surcharges had been applied to transactions with J.D. Fields in the past. Furthermore, there are questions of fact about the understanding of the parties in this transaction that are not addressed in the record. The parties who negotiated this particular transac-

---

**74.** Purchase Order 1545911, Exhibit J to J.D. Fields' Response, Docket Entry No. 31.

**75.** Order Acknowledgment for P.O. 1545911, Exhibit 33 to USSI's Motion, Docket Entry No. 22, USSI00094. The order acknowledgment actually estimates the charge to be $246,651.39, which is $14.95 lower than the

amount charged on the invoice; this discrepancy is not material for present purposes.

**76.** Price Announcement, April 25, 2008, Exhibit 27 to USSI's Motion, Docket Entry No. 22, USSI00101.

tion were Doug McKenzie of J.D. Fields and Seth Ulrich of USSI, and neither of these individuals has provided affidavits or deposition testimony concerning the transaction.

In summary, the court is not convinced that USSI has proven its contract damages as a matter of law. Therefore, pursuant to Federal Rule of Civil Procedure 56(d)(2), it will grant summary judgment on the issue of liability but not on the amount of damages.

## D. Attorneys' Fees

■ USSI asserts that it is entitled to attorneys' fees and court costs for recovering its breach of contract damages related to P.O. 1545911. USSI argues that it is entitled to these fees and costs on two separate grounds. First, USSI asserts that it is entitled to these fees under TEX. CIV. PRAC. & REM.CODE § 38.001(8), which provides, "A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for: ... (8) an oral or written contract." J.D. Fields has not disputed that this claim involves a written contract, nor that Texas law governs this dispute. As discussed above, the court concludes that J.D. Fields is liable for breach of contract for its failure to pay for the pipe shipped pursuant to P.O. 1545911. Therefore, under Texas law USSI is entitled to the attorneys' fees and court costs it has expended in pursuing its breach of contract claim.

USSI argues that it is also entitled to its attorneys' fees under the terms of its order acknowledgment for P.O. 1545911, which states, "If Seller has to take legal action to collect any amount due hereunder, Buyer shall pay all court costs plus reasonable attorneys' fees incurred by Seller in bringing such legal action."[77] J.D. Fields has not disputed that a valid contract existed between the parties, nor has it disputed USSI's contention that this clause became a part of the contract upon contract formation. Therefore, the court concludes that USSI is entitled to its attorneys' fees and court costs involved in pursuing its breach of contract claim on the separate ground of the parties' contractual agreement.

## V. Order

For the reasons explained above, USSI's Motion for Summary Judgment (Docket Entry No. 22) is **GRANTED** in part and **DENIED** in part. The court grants USSI's Motion for Summary Judgment regarding J.D. Fields' claims for breach of contract, promissory estoppel, and fraud. The court also partially grants USSI's Motion for judgment as a matter of law on its counterclaim, concluding that J.D. Fields is liable to USSI for breach of contract, but that USSI has not established its damages as a matter of law. The court concludes that USSI is entitled to its attorneys' fees and court costs involved in pursuing its breach of contract claim.

Plaintiff, J.D. Fields' Partial Motion for Summary Judgment on Its Breach of Contract Claim (Docket Entry No. 24) is **DENIED.**

### MEMORANDUM OPINION AND ORDER ON MOTION FOR RECONSIDERATION

This action concerns a dispute between J.D. Fields & Company, Inc. ("J.D. Fields") and United States Steel International, Inc. ("USSI") regarding three

---

77. Order Acknowledgment for P.O. 1545911, Exhibit 33 to USSI's Motion, Docket Entry No. 22, USSI00095.

transactions for the sale of steel pipe. On October 14, 2009, the court issued a Memorandum Opinion and Order ("the Opinion," Docket Entry No. 39) granting in part and denying in part USSI's Motion for Summary Judgment (Docket Entry No. 22) and denying J.D. Fields' Motion for Partial Summary Judgment (Docket Entry No. 24). Pending before the court is Plaintiff, J.D. Fields & Company, Inc.'s Motion for Reconsideration (Docket Entry No. 41), in which J.D. Fields argues that the court erred in granting USSI's summary judgment motion. For the reasons explained below, the court will deny J.D. Fields' motion.

## I. *Procedural Background*

J.D. Fields filed this action against U.S. Steel on October 16, 2008, alleging breach of contract and promissory estoppel regarding two transactions for steel pipe in which J.D. Fields claimed that its purchase orders, P.O. 45850 and P.O. 46110, created binding contracts that U.S. Steel failed to fill (Docket Entry No. 1). On November 11, 2008, J.D. Fields added USSI as a defendant (Docket Entry No. 7). On November 12, 2008, U.S. Steel moved for the case against it to be dismissed, as USSI was the proper defendant (Docket Entry No. 8). The court granted U.S. Steel's motion on February 6, 2009 (Docket Entry No. 14). On December 3, 2008, USSI filed a counterclaim against J.D. Fields alleging that J.D. Fields had failed to pay for a shipment of steel pipe that it had accepted (Docket Entry No. 10). On July 29, 2009, J.D. Fields moved for leave to file a second amended complaint including allegations of fraud and negligent misrepresentation against USSI (Docket Entry No. 20). On August 20, 2009, the court granted J.D. Fields' motion in part, permitting J.D. Fields to amend its complaint to allege fraud, but denying leave to add the negligent misrepresentation claim because it

failed to state an actionable claim under Texas law (Docket Entry No. 28). USSI filed a Motion for Summary Judgment on July 31, 2009 (Docket Entry No. 22). On the same day J.D. Fields filed a Partial Motion for Summary Judgment on Its Breach of Contract Claim regarding P.O. 46110 (Docket Entry No. 24). On October 14, 2009, the court issued the Opinion granting in part and denying in part USSI's motion, and denying J.D. Fields' motion (Docket Entry No. 39).

On November 4, 2009, J.D. Fields filed the pending Motion for Reconsideration (Docket Entry No. 41). On November 24, 2009, USSI filed a Response in opposition to J.D. Fields' Motion (Docket Entry No. 55). J.D. Fields filed a Reply to USSI's Response on December 1, 2009 (Docket Entry No. 58), and on February 3, 2010, USSI filed a Sur–Reply (Docket Entry No. 61).

## II. *Standard of Review*

■ The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *See Shepherd v. International Paper Co.*, 372 F.3d 326, 328 n. 1 (5th Cir.2004). *See also St. Paul Mercury Insurance Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir.1997). If a motion for reconsideration is filed within ten days of the judgment or order of which the party complains, it is considered to be a Rule 59(e) motion; otherwise, it is treated as a Rule 60(b) motion. *See Shepherd*, 372 F.3d at 328 n. 1. However, since a court retains the power to revise an interlocutory order before the entry of judgment adjudicating all the parties' claims, rights, and liabilities, *see* FED.R.CIV.P. 54(b), the ten-day deadline does not apply to motions for reconsideration of interlocutory orders. Thus, a court may apply Rule 59(e)'s standards to a motion for reconsideration of an interlocutory order as long as the motion is not unreasonably

delayed. *See Standard Quimica De Venezuela v. Cent. Hispano International, Inc.,* 189 F.R.D. 202, 205 (D.P.R.1999).

The court's October 14, 2009, Memorandum Opinion and Order was an interlocutory order. J.D. Fields filed its Motion for Reconsideration twenty-one days after the court issued the Opinion. The court concludes that J.D. Fields did not unreasonably delay the filing of the motion and that the motion should, therefore, be considered under the standards applied to Rule 59(e) motions. *See id.*

■■■ "A Rule 59(e) motion 'calls into question the correctness of a judgment.'" *Templet v. HydroChem Inc.,* 367 F.3d 473, 478–79 (5th Cir.), *cert. denied,* 543 U.S. 976, 125 S.Ct. 411, 160 L.Ed.2d 352 (2004) (quoting *In re Transtexas Gas Corp.,* 303 F.3d 571, 581 (5th Cir.2002)). The Fifth Circuit has held that "such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.* at 479 (citing *Simon v. United States,* 891 F.2d 1154, 1159 (5th Cir.1990)). A motion to alter or amend the judgment under Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* Relief on this basis is also appropriate when there has been an intervening change in the controlling law. *See Schiller v. Physicians Resource Group Inc.,* 342 F.3d 563, 567 (5th Cir.2003). The Fifth Circuit has warned that altering, amending, or reconsidering a judgment under Rule 59(e) is an extraordinary remedy that courts should use sparingly. *Templet,* 367 F.3d at 479.

### III. *Analysis*

J.D. Fields alleges that the court committed four errors in the Opinion. J.D. Fields does not allege that there has been a change in the controlling law or that any new evidence has been discovered. Therefore, J.D. Fields is only entitled to relief under Rule 59(e) if it can show that the Opinion was based on "manifest errors of law or fact." *Templet,* 367 F.3d at 479.

### A. J.D. Fields' First Claim of Error

J.D. Fields argues that the court erred in concluding as matters of law that no contracts had been formed as to purchase orders 45850 and 46110. Specifically, J.D. Fields argues that the court, instead of considering the several factors that it mentioned in the Opinion, should have looked to (a) the terms of Moll's requests for quotations (RFQs), (b) the completeness of the terms contained in the RFQs and responding quotations, and (c) the fact that the offer was addressed only to J.D. Fields. These points correlate with the factors listed in Comment C to Restatement (Second) of Contracts § 26, dealing with "Quotation of Price."

As a preliminary matter, this argument "rehash[es] evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment"; the Fifth Circuit has stated that Rule 59(e) is not an appropriate vehicle for such arguments. *Templet,* 367 F.3d at 479. The court spent many hours considering the parties' arguments concerning the appropriate legal standard for questions of contract formation. The court concluded that generally "a price quotation is considered an invitation for an offer, rather than an offer to form a binding contract," *E.C. Styberg Eng'g Co. v. Eaton Corp.,* 492 F.3d 912, 918 (7th Cir.2007), and that "the purchase order usually is the first document having the legal attributes of an offer." *Gulf States Utils. Co. v. NEI Peebles Electric Prods., Inc.,* 819 F.Supp. 538, 549 (M.D.La.1993). Because there are exceptions to these general rules, however, the

court determined that the decisive question on whether a price quotation creates a binding offer is whether it reasonably appears from the price quotation that assent to the quotation is all that is needed to ripen the quotation into a contract. *See Crest Ridge Const. Group, Inc. v. Newcourt Inc.*, 78 F.3d 146, 152 (5th Cir.1996).

In answering this question, the court considered all of the parties' arguments and all of the summary judgment evidence. The court concluded, based on a number of factors, that it could not reasonably have appeared to J.D. Fields' employees that assent to USSI's price quotations was all that was needed to ripen the offers into contracts.[1] Although the court did not mention in the Analysis section of the Opinion the particular factors urged by J.D. Fields, the court took those factors, as well as several others, into consideration in deciding the motion. J.D. Fields appears to argue that it was error for the court to consider any factors other than those listed in Comment C to Restatement (Second) of Contracts § 26. J.D. Fields has not pointed the court to any Texas or Fifth Circuit opinions holding that these factors are the exclusive factors that a court can consider in determining whether a price quotation is an offer. The Eight Circuit opinion cited by J.D. Fields only characterizes these factors as "relevant." *Nordyne, Inc. v. International Controls & Measurements Corp.*, 262 F.3d 843, 846 (8th Cir. 2001).

The court is not persuaded that its analysis of the contract formation issues contained errors of law. Since J.D. Fields' argument is merely a rehashing of arguments already considered at the summary judgment stage, the court concludes that J.D. Fields is not entitled to relief under Rule 59(e) on this claim.

**B. J.D. Fields' Second Claim of Error**

J.D. Fields argues that the court erred in granting summary judgment to USSI on J.D. Fields' breach of contract claims because contract formation is a question of fact and, therefore, is inappropriate to dispose of in summary judgment. This argument is somewhat surprising given that J.D. Fields sought summary judgment on one of its own breach of contract claims.[2] Furthermore, J.D. Fields cites in its motion several cases in which courts determined contract formation issues as matters of law. *See Nordyne*, 262 F.3d at 846–847; *Audio Visual Assocs., Inc. v. Sharp Elecs. Co.*, 210 F.3d 254, 260–261 (4th Cir.2000); *Delta Brands, Inc. v. Wysong & Miles Co.*, 203 F.3d 828, 1999 WL 1240802, at *1 (5th Cir.1999). Many courts have done so after citing the rule that a price quote only becomes an offer if it reasonably appears from the price quote that assent to the quote is all that is needed to ripen the offer into a contract. *See Nordyne*, 262 F.3d at 846–847; *Gulf States*, 819 F.Supp. at 549. Courts may determine issues of contract formation as a matter of law, and may do so according to the reasonable appearance of a price quote, if there is no genuine dispute about any material fact. *See* FED.R.CIV.P. 56(c).

■■■ J.D. Fields also argues that the court improperly weighed evidence in reaching its decision. A court reviewing evidence for a summary judgment motion "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105

---

1. Memorandum Opinion and Order, Docket Entry No. 39, pp. 14–32.

2. Plaintiff, J.D. Fields & Company, Inc.'s Partial Motion for Summary Judgment on Its Breach of Contract Claim, Docket Entry No. 24, pp. 5, 9.

(2000). J.D. Fields clouds the distinction, however, between weighing the evidence to determine facts and weighing arguments about those facts to determine their legal consequences. It is the court's role to weigh arguments in order to determine the legal consequences of undisputed facts. The examples cited by J.D. Fields of alleged improper weighing in the Opinion are situations in which the dispute was not over the facts, but rather the legal interpretation of them.

For example, J.D. Fields objects to a particular passage in the Opinion, which it cites as an instance in which the court impermissibly weighed the evidence:

> In addition, Blackman uses the phrases "I can offer" and "We can offer" in his price quotation e-mails. While this terminology might weigh generally in favor of J.D. Fields' interpretation, it does not weigh strongly, since such language may be equally consistent with a price quotation.[3]

In this passage, the court is not determining a fact or judging credibility; the parties do not dispute whether Blackman's e-mail contained the phrase "I can offer." What the parties dispute, and what the court had to determine, was the legal significance of that phrase in the context of Blackman's e-mail. The court weighed the parties' arguments, and determined that the use of the word "offer" in e-mail negotiations does not necessarily mean that a party is making a binding offer. Likewise, the use of the word "weigh" in a sentence discussing evidence does not necessarily mean that a court is impermissibly weighing the evidence.

J.D. Fields also argues that the court improperly made factual findings regard-ing the parties' course of dealing. In the Opinion the court determined, on the basis of documents submitted by the parties, that the parties had followed in their thirty previous transactions "an essentially similar course of dealing" involving five steps.[4] The court also noted that "J.D. Fields has not presented any evidence that the general course of dealing between the parties was not as USSI describes."[5] In its summary judgment pleadings, J.D. Fields never argued that the documents presented by USSI were not authentic, or that they misrepresented the prior dealings between the parties. J.D. Fields argued, rather, that its interpretation of the documents— that the price quotations were offers which J.D. Fields accepted with its purchase orders—was the correct legal interpretation. The court considered J.D. Fields' arguments and explained why they were not persuasive.[6] The key point for present purposes is that J.D. Fields did not dispute the facts—i.e., that the parties' prior course of dealing involved a five-step process—but rather the legal interpretation of the facts—at what point in the five-step process a contract was formed. "[W]here one party has not contested the material facts of its prior course of dealing, the courts may find, as a matter of law, that a course of dealing existed." *Great N. Ins. Co. v. ADT Sec. Servs. Inc.*, 517 F.Supp.2d 723, 742 (W.D.Pa.2007) (citing *Capital Converting Equip. Inc. v. LEP Transp., Inc.*, 965 F.2d 391, 395 (7th Cir.1992) (affirming trial court's grant of summary judgment regarding course of dealing where one party failed to "refute any material factual issue concerning the extent or nature of its prior course of dealing")).

---

**3.** Memorandum Opinion and Order, Docket Entry No. 39, p. 22.

**4.** *Id.* at 27–28.

**5.** *Id.* at 28.

**6.** *Id.* at 28–30.

J.D. Fields also argues that the court impermissibly made factual findings about steel industry custom although J.D. Fields had presented contrary evidence. J.D. Fields argues that statements made by Guillermo Moll, the employee involved in the contract negotiations, in two affidavits and in his deposition created a fact question regarding industry custom.[7] The court considered the statements in question but interpreted them as describing Moll's subjective beliefs about the transactions in which he was taking part, rather than as describing industry custom. Moll may have subjectively believed that the price quotations he received were offers, but that belief would not necessarily be evidence of industry custom if the belief was not reasonable. Furthermore, in his deposition Moll made statements, not cited or explained by J.D. Fields, to the effect that, generally speaking, price quotes for steel pipe are subject to mill availability.[8] Moll's statements thus supported USSI's description of industry custom more than they contradicted it.

Alternatively, if the court had not viewed this evidence under the framework of industry custom, it would have considered it under the framework of commercial reality. USSI presented evidence, which J.D. Fields did not dispute, that steel-milling pipe is a technologically complex process involving large quantities of raw materials that are subject to wide variability in price and availability. Under these circumstances, it only makes sense for the mill to have the final say on what it can deliver. To accept the interpretation urged by J.D. Fields—that USSI's e-mailed price quotations constituted binding offers—would inevitably expose USSI to liability for contracts it could not physically, much less profitably, fill. J.D. Fields has never offered an explanation for how its interpretation would make sense in the commercial realities of steel-milling. Moreover, if the court had not considered the evidence concerning industry custom, it still would have reached the same conclusion on the basis of the other factors cited.

## C. J.D. Fields' Third Claim of Error

J.D. Fields argues that the court erred by granting summary judgment regarding J.D. Fields' fraud claims *sua sponte* without providing adequate notice that it intended to rule on these claims. J.D. Fields notes correctly that "district courts can enter summary judgment *sua sponte*, so long as the losing party has ten days notice to come forward with all of its evidence." *Washington v. Resolution Trust Corp.*, 68 F.3d 935, 939 (5th Cir.1995). In ruling on the fraud claim, the court stated:

USSI's Motion for Summary Judgment (Docket Entry No. 22) does not address J.D. Fields' fraud claim; J.D. Fields' motion to add the claim was filed only two days before USSI filed its Motion for Summary Judgment, which occurred on the deadline for dispositive motions. USSI's Motion, however, makes clear that it seeks summary judgment on all of the claims J.D. Fields has brought against it. Given the arguments presented in the parties' pleadings, the court concludes that there is sufficient evidence in the record to consider the fraud claims in this opinion and order.[9]

---

7. Plaintiff, J.D. Fields & Company, Inc.'s Motion for Reconsideration ("J.D. Fields' Motion"), Docket Entry No. 41, p. 17.

8. Deposition of Guillermo Moll, Exhibit 14 to J.D. Fields' Motion, Docket Entry No. 41, p.

274, lines 8–11; also *id.* at 96 line 6—97 line 7.

9. Memorandum Opinion and Order, Docket Entry No. 39, p. 37.

As the court stated in the Opinion, it interpreted USSI's motion as a motion for summary judgment on all of J.D. Fields' claims, rather than as a partial summary judgment motion. Furthermore, the court made its decision regarding the fraud claim entirely on the basis of reliance, an element of which J.D. Fields clearly had notice because of USSI's arguments regarding J.D. Fields' promissory estoppel claims. In discussing the notice requirement for *sua sponte* summary judgments, the Fifth Circuit has stated that "the non-moving party must also have some notice of what 'contention' or issue is placing his case in jeopardy." *General Retail Services, Inc. v. Wireless Toyz Franchise, LLC*, 255 Fed.Appx. 775, 788 (5th Cir. 2007). J.D. Fields had notice that the element of reliance was in jeopardy regarding its promissory estoppel claim, but in its briefing for summary judgment it never addressed that element or provided any other support for its promissory estoppel claim. The court concluded that it was appropriate to grant summary judgment on J.D. Fields' fraud claims on a point that J.D. Fields knew was in issue.

Furthermore, the court notes that J.D. Fields has not provided a single argument in its Motion for Reconsideration or its Reply for why the fraud claim had merit. Even if it lacked notice before, it surely has had an opportunity since to air its arguments. Yet, it has not provided the court with any reason to conclude that the prior ruling was in error.

### D. J.D. Fields' Fourth Claim of Error

J.D. Fields argues that the court erred when it considered USSI's Exhibit 33 as evidence of the agreed contract price for P.O. 1545911. This claim of error gives the court nothing to reconsider, as the court made no ruling as to the agreed contract price for P.O. 1545911. Specifically, the court concluded that USSI had not proven its contract damages as a matter of law.[10] Therefore, there was no ruling on this issue from which the court could grant relief.

### IV. *Order*

For the reasons explained above, the court concludes that J.D. Fields has not raised any "manifest errors of law or fact" for which the court should apply the extraordinary remedy of relief under Rule 59(e). *See Templet*, 367 F.3d at 479. Therefore, J.D. Fields' Motion for Reconsideration (Docket Entry No. 41) is **DENIED**.